Caldo MARES and Sally Mares, his wife, Plaintiffs-Appellants,

v.

CREDIT BUREAU OF RATON, and Janet Yarbrough, individually, and in her official capacity, Defendants-Appellees.

No. 84–1814.

United States Court of Appeals,
Tenth Circuit.

Sept. 8, 1986.

Richard J. Rubin, Santa Fe, N.M. (Anthony G. Lopez, Taos, N.M., with him on the briefs), for plaintiffs-appellants.

Owen M. Russell (Don Klein, Jr., with him on the briefs), Raton, N.M., for defendants-appellees.

Before MOORE and ANDERSON, Circuit Judges, and JOHNSON, District Judge.*

ANDERSON, Circuit Judge.

This appeal deals solely with the amount of attorneys' fees and costs awarded by the district court following its judgment in favor of plaintiffs, Caldo and Sally Mares. The underlying suit involved an action against the Credit Bureau of Raton for violating plaintiffs' rights under the Truth-In-Lending Act,[1] the Fair Credit Reporting Act,[2] and the Fair Debt Collection Practices Act.[3] Plaintiffs prevailed and were awarded damages totalling $2,500, which included $500 in punitive damages for defendants' conduct in violating the Fair Credit Reporting Act. The district court also ruled that plaintiffs were entitled to reasonable attorneys' fees as provided by each of the statutes.[4]

Plaintiffs' two attorneys ultimately submitted an application for fees and expenses

---

* Hon. Alan B. Johnson, District Judge of the United States District Court for the District of Wyoming, sitting by designation.

1. 15 U.S.C. §§ 1601–1667e (1982 & Supp. II 1984).

2. 15 U.S.C. §§ 1681–1681t (1982 & Supp. II 1984).

3. 15 U.S.C. §§ 1692–1692o (1982 & Supp. II 1984).

4. Truth-in-Lending Act, 15 U.S.C. §§ 1640(a), 1667b(a), 1667d(a) (1982); Fair Credit Reporting Act, 15 U.S.C. §§ 1681n, 1681o (1982); Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a) (1982).

totalling $29,612.60, of which the court awarded $4,261.49.[5] This appeal by plaintiffs' attorneys followed.[6] They contend that the award was inadequate and that the district court failed to comply with our decision in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983). We affirm in part and reverse in part.

As litigation goes, the development of this case appears to be essentially unremarkable. During the sixteen month period from complaint to trial the docket sheet shows activity in all but two months. The complaint was filed on October 18, 1979. Both sides conducted timely discovery consisting of interrogatories and depositions. Plaintiffs also propounded requests for admissions and sought discovery of documents. The defense was vigorous, including resistance to discovery, and at one point plaintiffs were forced to seek an order compelling responses. Following discovery plaintiffs filed a motion for summary judgment, which was granted on the Truth-in-Lending violation issue. Both sides submitted memoranda arguing that motion. The court's written opinion was eight pages long, citing much of the authority researched and presented by plaintiffs.

Pursuant to order of the court, both sides presented proposed findings of fact and conclusions of law prior to trial, as well as the usual pretrial lists of witnesses and exhibits. Trial commenced on February 25, 1981, and concluded the following day.

Plaintiffs submitted supplemental requested findings and conclusions two weeks later. On March 17, 1981, the district court entered its nine-page findings and conclusions. They generally followed the sequence and content of the findings proposed by plaintiffs concerning the federal statutory violation issues. The court adopted plaintiffs' proposed conclusions of law almost word for word on those issues, and also awarded attorneys' fees. The court denied as redundant any damage award on plaintiffs' state law claim and denied damages for alleged loss of equity and appreciation in a prospective home. Plaintiffs also suffered a major defeat on the amount of punitive damages sought. In all, plaintiffs were awarded a total of $2,500.

The month prior to trial, plaintiffs' attorney Anthony G. Lopez associated Richard J. Rubin as co-counsel. Mr. Rubin was present and assisted at trial. His subsequent fee application was denied by the court on the ground that his assistance was unnecessary.

For the professional services just outlined, plaintiffs' attorneys filed an application for fees and expenses two weeks after the court's favorable decision.[7] Mr. Lopez requested fees and expense reimbursement totalling $15,463.81. Mr. Rubin requested a total of $3,478.34. Then ensued the dispute over fees which is now before us.

Because Mr. Lopez had signed a contingent fee agreement with plaintiffs, the dis-

---

5. Additional amounts were referred to the clerk to be taxed as costs.

6. We consider plaintiffs' attorneys to be the real parties in interest in this proceeding. *See* Affidavit of Sally Mares, R. Vol. I at 348, and Supplemental Affidavit of Anthony G. Lopez, par. 10, R. Vol. I at 345–46.

7. The application for fees and expenses showed the following:

**To Mr. Lopez:**

|  |  |  |
|---|---|---|
| A. | 238.66 hrs. @ $60.00/hr. | $14,319.60 |
| B. | 4.75% gross receipts tax | 680.18 |
| C. | Hayden Deposition | 32.13 |
| D. | Mares Deposition | 35.81 |
| E. | Copying | 97.90 |
| F. | Travel Costs to Trial, Raton, and Library | $ 214.76 |
| G. | Telephone Calls | 83.43 |
|  | TOTAL | $15,463.81 |

**To Mr. Rubin:**

|  |  |  |
|---|---|---|
| A. | 44.33 hrs. @ $75.00/hr. | $ 3,324.75 |
| B. | 4% gross receipts tax | 132.99 |
| C. | Copying | 19.10 |
| D. | Parking at Trial | 1.50 |
|  | TOTAL | $ 3,478.34 |

R. Vol. I at 308. A separate cost bill was filed claiming costs for another deposition, witness fees, and an expert witness fee, totalling $806.29. R. Vol. I at 330.

trict court delayed an award of fees pending the outcome of *Cooper v. Singer*, 689 F.2d 929 (10th Cir.1982), *on rehearing*, 719 F.2d 1496 (10th Cir.1983), then on appeal to this court. In the meantime, on December 2, 1981, plaintiffs' attorneys filed a second application for fees and costs in which Mr. Lopez requested $15,640.84, and Mr. Rubin $4,239.33.[8] On September 30, 1982, a panel of this court held, in *Cooper*, that when counsel agreed to be paid in accordance with a contingent fee contract, that contract constituted the maximum statutory fee allowable.

On November 5, 1982, the district court entered an initial order granting fees to plaintiffs. On the authority of *Cooper*, the district court awarded attorneys' fees in the amount of $833.33, amounting to one-third of plaintiffs' $2,500 recovery. Four days later, plaintiffs' counsel informed the trial court that a petition for rehearing had been filed in the *Cooper* case. Plaintiffs' counsel then requested the trial court to withdraw its November 5, 1982, fee order to await the outcome of the *Cooper* rehearing. On October 24, 1983, this court, en banc, reversed *Cooper* and rejected the calculation of statutory attorneys' fees based on a percentage of the client's recovery. *Cooper v. Singer*, 719 F.2d 1496 (10th Cir. 1983).

On January 9, 1984, nearly three years after the trial court decided this case, plaintiffs' counsel submitted a third request for attorneys' fees. The chief difference between that request and those previously submitted was a claim for an increase in hourly rates from $60.00 to $90.00 per hour

for Mr. Lopez, and $75.00 to $100.00 per hour for Mr. Rubin. The latter also claimed additional hours for collateral assistance to counsel in the *Cooper* case and for work on the attorneys' fee request.

Thus, by 1984, plaintiffs' counsel had logged 303.42 hours on the case, including time expended on their application for fees. Their total requested fees and expenses amounted to $29,612.60, plus $860.29 requested in a separate cost bill. At every stage of the fee application proceedings defendants vigorously contested the amounts claimed. They also argued strenuously that fact issues had been raised by plaintiffs' attorneys which should be explored by way of a hearing. Plaintiffs' attorneys opposed a hearing, R. Vol. I at 350, and the court did not hold one. On May 3, 1984, the district court entered a revised memorandum opinion and order awarding attorneys' fees of $3,960.00, $188.10 gross receipts tax, and expense reimbursement in the amount of $181.33, totalling $4,329.43.[9]

Plaintiffs' attorneys contend that the district court erred in its award: (a) by reducing their hours eligible for compensation without undertaking a "task specific analysis" and making findings sufficient for review; (b) by refusing to award fees to Mr. Rubin; (c) by refusing to recognize increased fee rates in effect at the time the award was made; and (d) by improperly excluding certain expenses.

An appellate court plays a limited role in reviewing a trial court's award of attorneys' fees. "We customarily defer to the

8.

**To Mr. Lopez:**

| | | |
|---|---|---|
| A. | 243.167 hrs. @ $60.00 | $14,590.02 |
| B. | 3.75% gross receipts | 547.13 |
| C. | Hayden Deposition | 32.13 |
| D. | Mares Deposition | 35.81 |
| E. | Copying | 97.90 |
| F. | Travel Costs to Trial, Raton, and Library | 214.76 |
| G. | Telephone | 123.09 |
| | TOTAL | $15,640.84 |

**To Mr. Rubin:**

| | | |
|---|---|---|
| A. | 54.11 hrs. @ $75.00 per hr. | $ 4,058.25 |
| B. | 3.75% gross receipts tax | 152.18 |
| C. | Copying | 19.10 |
| D. | Telephone calls | 8.30 |
| E. | Parking at trial | 1.50 |
| | TOTAL | $ 4,239.33 |

R. Vol. I at 376–77.

9. The court referred claims for deposition costs (Mares and Hayden) totalling $67.94, to the clerk of the court for evaluation and processing pursuant to local court rules relating to cost bills.

District Court's judgment because an appellate court is not well suited to assess the course of litigation and the quality of counsel." *Copeland v. Marshall,* 641 F.2d 880, 901 (D.C.Cir.1980) (en banc). The trial court "saw 'the attorneys' work first hand,'" *Poolaw v. City of Anadarko,* 738 F.2d 364, 368 (10th Cir.1984), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985) (quoting *Higgins v. State ex rel. Oklahoma Employment Security Commission,* 642 F.2d 1199, 1203 (10th Cir. 1981)), and "has far better means of knowing what is just and reasonable than an appellate court," *Trustees v. Greenough,* 15 Otto 527, 105 U.S. 527, 26 L.Ed. 1157 (1882). Accordingly, an attorneys' fee award by the district court will be upset on appeal only if it represents an abuse of discretion. *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air,* — U.S. —, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Evans v. Jeff D.,* — U.S. —, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Comacho v. Colorado Electronic Technical College, Inc.,* 590 F.2d 887 (10th Cir. 1979); *see also Copeland,* 641 F.2d at 901; *Konczack v. Tyrrell,* 603 F.2d 13, 19 (7th Cir.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Carr v. Blazer Financial Services, Inc.,* 598 F.2d 1368 (5th Cir.1979). Findings on underlying questions of fact are subject to the clearly erroneous standard of review. *Ries Biologicals, Inc. v. Bank of Santa Fe,* 780 F.2d 888 (10th Cir.1986).

"We reemphasize that the district court has discretion in determining the amount of a fee award." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). In that process "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* "It remains important, however, for the district court to provide a concise but clear explanation of its reasons

for the fee award." *Id.* Such explanations must "give us an adequate basis for review." *Ramos,* 713 F.2d at 552. And, in reaching their determinations district courts must follow the guidelines established by the Supreme Court and this court. *See, e.g., Delaware Valley,* 106 S.Ct. 3088; *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541; *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933; *Ramos v. Lamm,* 713 F.2d 546. "[T]he benchmark for the awards under nearly all of ... [the statutes awarding fees] is that the attorney's fee must be 'reasonable.'" *Delaware Valley,* 106 S.Ct. at 3096.

I

## Determination of Allowable Hours

The district court perceptively and accurately focused its attention on the question of reasonable hours in this case. In *Blum* and *Delaware Valley* the Supreme Court emphasized that the "basic standard" for finding reasonable fees is the determination of reasonable hours and rates. *Blum,* 465 U.S. at 898, 104 S.Ct. at 1548. The many factors for evaluating legal representation set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), and elsewhere, "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9 (quoted in *Delaware Valley,* 106 S.Ct. at 3098.) "[T]he lodestar figure [reasonable hours times reasonable rates] includes most, if not all, of the relevant factors comprising a 'reasonable' attorney's fee." *Delaware Valley,* 106 S.Ct. at 3098. Once counsel has carried its burden of proof on the "basic standard" a strong presumption arises that the product represents a reasonable fee.[10] *Delaware Valley, Id.* Thus, the court's most careful labor must be concentrated on adjustments to claimed hours and rates in order to arrive at reasonable hours

---

10. It must be remembered, however, that the Supreme Court spoke of such a presumption in the context of a fee *enhancement* case. The

presumption may not be as strong in a situation which demands that the ultimate fee must be reduced in order to achieve what is reasonable.

and rates. We first address the district court's adjustments to hours claimed by counsel in this case.

### A. Mr. Lopez.

Mr. Lopez' first application for fees claimed a total of 238 hours and 40 minutes expended in preparing and trying plaintiffs' case, including post-trial work on findings and conclusions.[11] The total also included 4½ hours for work on the fee application, later increased through two supplemental affidavits to approximately 13½ hours.[12] After adjustment for work on the fee applications, Mr. Lopez' "Final Accounting of Attorneys' Fees and Litigation Expenses," filed on December 2, 1981, claimed a total of 243.167 hours. R. Vol. I at 376. Those hours remained the same in a later submission filed January 9, 1984. R. Vol. I at 389.

The district court's disposition of Mr. Lopez' application falls into three general categories: preparation; trial; and post-trial work, consisting mostly of time spent on the fee application. No hours were recognized by the court for post-trial work, and all of those hours are in issue. All sixteen hours recorded as trial time, R. Vol. I at 323, were awarded; therefore, trial time is not in issue. The remaining hours, totalling 215½, R. Vol. I at 323, relate to development of the case. Of that amount the court awarded 50, or about 23%. R. Vol. I at 414.

We direct our attention to the district court's disallowance of approximately 77% of the time claimed by Mr. Lopez for trial preparation. Concerning that reduction, the court summarized its views as follows:

> From a review of the file and from an understanding gained from the trial of this case, it is this Court's conclusion that the case could reasonably have been prepared by a reasonably competent lawyer in 50 hours. The excessive time spent by Mr. Lopez in preparation of the

case is due, this Court must reluctantly conclude, to inexperience and billing to activities not properly considered as lawyer's billable time. The Defendant should not have to pay for excess time or time otherwise billable under the guidelines set forth in the authorities cited in this Opinion.

R. Vol. I at 412.

Counsel contends the district court committed two errors of law in its wholesale reduction of hours: first, by failing to provide "a meaningful explanation of its judgment" so that "the court's thinking can be reviewed in a meaningful way," Appellants' Brief in Chief at 10, 19; second, by failing "to follow the task specific analysis adopted in *Ramos*," Appellants' Brief in Chief at 10. Concerning the latter point, counsel suggests that our opinion in *Ramos* requires district courts "to identify what tasks must be performed to prepare for trial, what responses were necessitated to reply to the actions taken by the adversary, and what amount of time would have been required to perform each of the tasks." Appellants' Brief in Chief at 18.

■ *Ramos* establishes no such procedure as a matter of necessity. There is no requirement, either in this court or elsewhere, that district courts identify and justify each disallowed hour. *See New York State Association for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983); *Copeland v. Marshall,* 641 F.2d at 903. Nor is there any requirement that district courts announce what hours are permitted for each legal task. Such a rule would lead to disagreement of the most odious sort between court and counsel.

No objective standard exists to resolve a dispute, for example, over ten hours logged for drafting interrogatories. A lawyer may insist the time was necessary, while a court, based upon experience and judgment, including knowledge of the case it-

---

11. Twenty-five minutes on calls to Messrs. Gonzales and Rubin are not explained by subject matter.

12. Mr. Lopez' first and second supplemental affidavits claimed an additional four hours and five hours, respectively, but not all of the entries were explanatory regarding subject matter. R. Vol. I at 347, 374.

self, may declare half the time to have been unnecessary. Under the theory proposed by plaintiffs' counsel, dozens of subsidiary questions then arise. Was the lawyer interrupted while drafting? Was the draft in longhand or dictated? Did the lawyer use previous forms on a word processor? Was research necessary? Were, for example, fourteen of thirty interrogatories really necessary? Is the lawyer a slow thinker, a poor writer (occasioning many drafts), or harassing the opposition for tactical purposes?

As we stated, such inquiries would quickly become odious. The process would descend to a contest between court and counsel, with counsel insisting that his or her integrity is being impugned every time the court questions the number of hours logged for a given day or a particular task. And, such a process would still not result in a product free of dispute. To the contrary, disputes would be multiplied, violating the Supreme Court's caution that a "request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use. *Hensley*, 461 U.S. at 424, 103 S.Ct. 1933; *Love v. Mayor of Cheyenne*, 620 F.2d 235, 237 (10th Cir. 1980); *Northcross v. Board of Education*, 611 F.2d 624 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Davis v. Fletcher*, 598 F.2d 469 (5th Cir.1979). For example, in *Hensley* the Supreme Court expressly found to be proper a one-third reduction of one attorney's hours, "to account for his inexperience and failure to keep contemporaneous time records." 461 U.S. at 438 n. 13, 103 S.Ct. at 1942 n. 13. In *Delaware Valley*, the Supreme Court expressed no disagreement with general reductions by the district court of 48% and 33⅓% in time claimed by

various counsel. Reasons given for those reductions included findings of "unnecessary, unreasonable or unproductive" time, 106 S.Ct. at 3099, and that "the time spent on the particular activity was 'excessive,' or that a less amount of time was 'reasonable,'" *id.* at 3092 n. 2.

In *Ramos* we likened the process to a senior partner in a private firm scrutinizing and adjusting time reported by subordinates. 713 F.2d at 555. As anyone who has been in private practice well knows, for billing purposes such adjustments can take many forms, including a general write-down of total hours logged. In sum, the district court did not err by refusing to isolate and analyze every hour assigned to different tasks by Mr. Lopez and then prescribe task hours which were acceptable.

The next question is whether the district court gave an adequate explanation of its reasons for reducing the hours claimed by 77%. We find that it did. In its eighteen-page opinion the court reviewed the course of the case, the issues, the trial, and counsels' time sheets.[13] The court found that considering the nature and circumstances of the case "entirely too much time is being claimed by Mr. Lopez for preparation." R. Vol. I at 412. It assigned inexperience as the main cause for the excessive hours. That explanation, along with the court's review of the litigation, is clear, concise, and adequate for review. The court leaves no doubt concerning its reasoning.

Counsels' real complaint is, in effect, that the court's decision and reasoning are not supported by the evidence. The question resolves itself into whether the district court abused its discretion by a reduction of such magnitude.

We have carefully reviewed the record on appeal. There is much to commend Mr. Lopez' efforts in this case. He correctly diagnosed the causes of action in the first instance. The complaint was clear, direct, and legally sufficient. It neither required amendment during the litigation, nor con-

---

**13.** Although counsel argues that the district court did not go beyond a sampling of the time reported, it is clear that the court reviewed

every entry. Mr. Lopez' time sheets cover only seven pages and are easily reviewed.

tained any defect which would draw a successful motion to dismiss for failure to state a claim. Mr. Lopez promptly engaged in discovery and pursued it vigorously, including a motion to compel. He researched, briefed, and filed a motion for summary judgment which was successful on a significant issue. His proposed findings and conclusions were concise and substantive, resulting in adoption by the district court in large part. He certainly afforded zealous, successful representation to his clients; and he exposed conduct by the defendant so improper as to merit punitive damages.

As usual, there are opposing considerations when reviewing facts. In *Hensley* the Supreme Court emphasized the need for counsel to exercise billing judgment.

> Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall*, 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939. Contrary to those instructions, Mr. Lopez, in practice for just over a year at the commencement of this case, and who concedes his lack of expertise, billed every hour logged. No adjustments were made for any reason, such as research devoted to general education in the areas of law in question or, on a smaller scale, the much discussed trips to Santa Fe for filing purposes when a messenger could have done the job—or messenger rates charged.[14]

The complaint filed by Mr. Lopez reveals a command of virtually all of the essential legal and factual elements necessary to prove the statutory violations charged. Indeed, the proposed findings and conclusions submitted to the court just five days before trial closely follow the complaint itself. These findings and conclusions neither required nor warranted any extended search for facts. Of the ninety findings of fact proposed by Mr. Lopez before trial the great majority were either known by him at the time the complaint was filed or were within plaintiffs' knowledge. Preparation of those facts for trial required no great effort by Mr. Lopez. Proposed findings 22, 23, 48, and 68 dealing with the defendants' business practices; and proposed findings 32, 36, 51–59, 65, 70, 80, 82, and 83 dealing with defendant Yarbrough's knowledge, state of mind, and actions, posed no complex task of discovery.

Mr. Lopez failed entirely on his major theory of damage: an alleged loss of equity and appreciation in a house which plaintiffs theoretically would have purchased if the FHA had granted a loan. He also grossly overevaluated what the case would warrant by way of punitive damages. Doubtless, he uselessly expended time on those theories. Worse, counsel may have blown the case far out of proportion on the mistaken belief that it would yield a big judgment and, consequently, a very large fee.

Plaintiffs' case necessitated only a short trial, a fact emphasized by the district court. Plaintiffs' pretrial submission proposed only five witnesses and twenty-three exhibits, and the court noted that direct and redirect examination required only 230 minutes. R. Vol. I at 404. While the length of trial is not always proportionate to required preparation, and vice versa, this case justifies the court's comparison. It was no great leap from complaint to either the summary judgment proceedings or the court's ultimate findings.

---

14. The Santa Fe trips are an example of the general lack of precision characterizing counsel's fee application. He asserts in his brief, Appellant's Brief in Chief at 14, that the district court did not know the trips were necessary because of filing deadlines. However, his submission to the district court contained that information. R. Vol. I at 344.

Finally, in submitting his fee application Mr. Lopez filed an affidavit by attorney Steve Herrera supporting the hourly rate charged and attesting to Mr. Lopez' general conscientiousness and competency. But Mr. Lopez neither filed an affidavit, nor offered any witnesses in support of the reasonableness of the time spent in preparation of plaintiffs' case.[15] He then represented to the court in writing that "all relevant facts are before the court" and that no hearing was required. R. Vol. I at 350.[16] At that point the district court was required to exercise its own judgment in determining what hours were reasonably expended consistent with the ultimate "value of a lawyer's services." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *see also Ramos*, 713 F.2d at 553.

For the reason given and illustrated earlier, it is fruitless in this case for us to comment upon specific hours. The same is true for instances cited by the district court. We have reviewed every entry in Mr. Lopez' time sheets. Whether as a result of inexperience or other reasons, the record before us strongly suggests that the time expended was greatly disproportionate to that required to establish the statutory violations in question and conduct a short trial.

■ As indicated, the question is not whether we would have awarded more hours, but whether the district court abused its discretion. Under that standard of review we cannot say that the district court was in error. Additionally, the court's underlying findings of fact were not clearly erroneous.

We next address the district court's failure to allow any of the 13½ hours claimed for post-trial work. No specific findings or conclusions were directed to that subject by the court. Thus, we evaluate Mr. Lo-

pez' post-trial time submission on a *de novo* basis. Only thirty minutes of that time, described as work on "amended and additional findings and conclusions," R. Vol. I at 323, is expressly associated with the case itself. The balance appears to relate to Mr. Lopez' fee request.

An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application. *Gurule v. Wilson*, 635 F.2d 782, 792 (10th Cir.1980); *Love v. Mayor of Cheyenne*, 620 F.2d at 237. As explained in greater detail in our review of Mr. Rubin's fee application, not every hour expended on a fee request is necessarily reasonable or compensable. The same standards employed in evaluating time expended in trial and trial preparation apply, to the extent appropriate in a given case. Here, we find that Mr. Lopez should have been compensated for a reasonable portion of the time spent after trial on the case itself, and for preparing and submitting his fee application, including supporting affidavits.

■ We deplore the drain on judicial time and that of counsel, as well as the expense involved in remanding disputes over attorney's fees for hearings on relatively insignificant items. Therefore, since the amount is small we take the unusual step here of determining that an additional four hours is reasonable for Mr. Lopez' post-trial work.

### B. Mr. Rubin.

Mr. Rubin's participation in this case presents an unusual situation for review. The district court evaluated his performance within the context of plaintiffs' case and stated: "This court will not order defendant to pay the claims of Mr. Rubin. His services as a second lawyer were not

---

**15.** Of course, the district court is not required to accept such testimony; but a credible, properly prepared witness on the subject of reasonable time or fees can provide valuable assistance.

**16.** Normally we would expect the district court to hold a hearing. *See City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 472–73 (2d Cir.1974). How-

ever, it is evident from the state of the record that a hearing may not have been productive in this case. In any event, plaintiffs' counsel expressly waived their right to a hearing, and they cannot now complain about the absence of one. *See Blum*, 465 U.S. at 892 n. 5, 104 S.Ct. at 1545 n. 5.

reasonably required in this case." R. Vol. I at 407. Thus, all 60.26 hours claimed by Mr. Rubin through January 9, 1984, were disallowed. The difficulties presented on review become apparent when Mr. Rubin's time is divided into the same three segments as those of Mr. Lopez: preparation, trial, and post-trial work.

Mr. Rubin's time sheet shows the following entries prior to trial:

| Date | Time | Activity |
|------|------|----------|
| 1/13/81 | 1.00 | TC Anthony |
| 1/20/81 | 1.50 | Meet w/Anthony |
| 2/06/81 | .25 | TC Anthony |
| 2/09/81 | 3.00 | Review findings & conclusions & deposition |
| 2/11/81 | .50 | TC Owen |
| 2/13/81 | 3.50 | Review case w/ Anthony |
| 2/24/81 | 1.50 | TC Anthony & prep. |

R. Vol. I at 358 (emphasis added). Those entries do not disclose one iota of assistance, expert or otherwise, which was actually necessary to plaintiffs' case at that late stage of its development. Instead, the entries suggest the time was spent familiarizing Mr. Rubin with the case and the product of Mr. Lopez' efforts, or corroborating Mr. Lopez' own thought processes and work product.

There is a difference between assistance of co-counsel which is merely comforting or helpful and that which is essential to proper representation. Mr. Lopez' own efforts are the best evidence against the latter proposition in this case. If an expert in consumer law was needed, it was needed at the beginning of the litigation when causes of action were being diagnosed, the complaint framed, and discovery programmed.[17] However, Mr. Lopez did all of that work himself, as well as subsequent research and legal memoranda on the motion for summary judgment, and submission of the pretrial order.

By the time Mr. Rubin appeared on the scene the discovery cutoff date had passed. The pretrial order was on file, and Mr. Lopez was at the point of drafting proposed findings and conclusions. The record discloses no material contribution by Mr. Rubin which varied the course of the case set long before by Mr. Lopez. Thus, it cannot be said that the district court erred in its finding that plaintiffs did not need co-counsel prior to trial.

The district court evaluated the trial segment of Mr. Rubin's time and found it to be unnecessary to a proper presentation of plaintiffs' case. Since plaintiffs' counsel did not include the trial transcript in the record, we are unable to review or disagree with the district court's conclusion.

That brings us to a consideration of Mr. Rubin's efforts after trial. Concerning the miniscule time attributable to the case itself, our views with respect to pretrial time logged by Mr. Rubin apply. The bulk of Mr. Rubin's post-trial time was devoted almost exclusively to the issue of attorneys' fees. As we stated previously, the general rule is that at least some compensation is generally allowable for work reasonably expended on the fee application, *Gurule v. Wilson*, 635 F.2d at 792; *Love v. Mayor of Cheyenne*, 620 F.2d at 237, although hours not spent representing the client are at best on the borderline of what Congress intended to be compensable. There is a difference, however, between time necessary to prepare and submit an application for fees, and hours spent disputing a fee award. The latter are especially suspect, and may be disallowed in their entirety. The district court has great leeway in this regard, and "[o]nly in extraordinary circumstances will we disturb a district judge's exercise of his discretion in awarding or denying fees for establishing fees." *Muscare v. Quinn*, 680 F.2d 42, 45 (7th Cir.1982); *see Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir.1979), *aff'd*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978).[18] Whether the district court exer-

---

**17.** Hours awarded to an expert brought in for those purposes would, of course, bring into question any duplicate hours logged at the time by the lawyer who needed the assistance.

**18.** Although there is no perfect parallel between

cised its discretion on the subject of fees for the fee dispute itself in this case is debatable.

■ Here, however, we are confronted with the unique situation where an attorney's only cognizable contribution to the litigation is his search for fees. With respect to Mr. Rubin's time unsuccessfully spent in arguing that he should have been paid for work on the merits of plaintiffs' case, no award can be made. We do not believe Congress intended to award fees solely for fruitless work in seeking them. Compensation for labor invested in a fee application must be joined with and ancillary to compensation for necessary professional representation on the merits of the case.

■ A substantial part of Mr. Rubin's efforts in pursuing legal fees relate to Mr. Lopez. For two reasons that time is also not deemed to be "reasonable." First, the statutes in question do not authorize fees solely for an attorney to represent the attorney seeking fees, and it would be a rare and unusual circumstance where such an award could be justified. Second, since this appeal was essentially unsuccessful, and the impact of our decision in *Cooper v. Singer* must be regarded as collateral to this case, counsel's post-trial time disputing the fee award cannot be considered as compensable. Additionally, as we have indicated previously, time devoted solely to disputing a fee award may be deemed noncompensable in any event.

In sum, there is no basis for an award of statutory attorneys' fees to Mr. Rubin, and all of his hours are disallowed. To the extent his efforts result in a benefit to Mr. Lopez, he must look to Mr. Lopez for recompense, if any.

## II

### Hourly Rate

There is no dispute in this case that Mr. Lopez' hourly rate in 1980 and 1981, during the course of litigation on the merits, was $60.00, or that such rate was reasonable. His contention is that the district court violated our instructions in *Ramos* by refusing to apply his hourly rate of $90.00, in effect in 1984 when the fee award was determined by the court.

In *Ramos* we expressed the view that the "hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed." *Ramos*, 713 F.2d at 555. We explained the rationale for utilizing current rates as follows:

> The lawyers seeking fees usually will not have been paid for their services until the court makes its allowance. We think that awarding compensation at current rates will roughly approximate periodic compensation adjusted for inflation and interest and will obviate the necessity of guessing when periodic billings would have been made and paid in an analogous private situation.

*Id.*

The district court duly noted *Ramos'* mandate that fees be based on "current rates in effect at the time the fee is being established," *id.*, but construed *Ramos* "as dictating and pointing to the time when the court is setting the fee in an ordinary case and in the usual and ordinary course of litigation," R. Vol. I at 413. The court noted that had the ordinary course been followed in the litigation "the fee would have been established sometime in the spring or early summer of 1981." R. Vol. I at 413.

The court correctly concluded that our views on the use of current rates generally referred to awards made promptly at the conclusion of the phase of the litigation to which the award relates. In this case that refers to the entry of the court's findings and conclusions following trial. It is true

---

statutory fee awards and fees in private practice, we cannot help but observe that in the professional marketplace clients rarely pay their attorney for time spent quarreling with them, in court or otherwise, over the amount of the bill.

that during the very substantial time between the conclusion of this case and the fee award defendants continued to enjoy, and plaintiffs' counsel was deprived of, the use of the fee award. However, the same is true of awards made immediately following trials but not paid for many years because of appeals. It is also true in this case from the date of the award to the present time. The question is one of interest, not hourly rates, and counsel has not raised that issue.

■ We decline to expand the common sense meaning of reasonable hourly rates for time spent on plaintiffs' case to accommodate counsel's argument. The district court did not abuse its discretion in determining that the reasonable hourly rate for counsel's work in this case was the rate in effect during the time the work was performed.

### III

### Costs and Expenses

In *Ramos* we said "[i]tems that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases *if reasonable in amount.*" *Ramos,* 713 F.2d at 559 (emphasis added). That rule applies as well to the fee awards granted by the statutes involved in this case. Of course, the burden is on the prevailing plaintiffs to establish the amount of compensable costs and expenses to which they are entitled. *See Spray-Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226 (7th Cir.1982), *aff'd,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984); *NAACP v. Wilmington Medical Center,* 530 F.Supp. 1018 (D.Del.1981), *rev'd on other grounds,* 689 F.2d 1161 (3d Cir.1982), *cert. denied,* 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983). Prevailing parties necessarily assume the risks inherent in a failure to meet that burden. *In re Fine Paper Antitrust Litigation,* 98

F.R.D. 48 (E.D.Pa.1983), *aff'd in part and rev'd in part,* 751 F.2d 562 (3d Cir.1984).

On December 2, 1981, and on January 9, 1984, plaintiffs' counsel filed, respectively, their "Final Accounting of Attorneys' Fees and Litigation Expenses," R. Vol. I at 376, and their "Notice of Final Decision and Request for Entry of Final Award for Attorneys' Fees," R. Vol. I at 392. Both submissions contained identical cost and expense claims by Mr. Lopez,[19] as follows:

| | |
|---|---|
| 3.75% Gross Receipts Tax | $ 547.13 |
| Hayden Deposition | 32.13 |
| Mares Deposition | 35.81 |
| Copying | 97.90 |
| Travel Costs to Trial, Raton and Library | 214.76 |
| Long Distance Telephone Calls | 123.09 |

The district court allowed a gross receipts tax in full for the fee ultimately awarded. As to the other amounts the court found:

A. $32.13 and $35.81 for Hayden and Mares depositions. In this regard, the ordinary recoverable costs will be taxed against Defendant and for the Plaintiffs. If these two items fall within recoverable costs the Clerk will tax them in accord with the proper cost bill. If they are not thus taxable the Clerk will not allow them.

B. $97.90 for 'copying' and $83.43 for long distance telephone. This Court has learned recently that the modern practice is to bill these items separately from the hourly rate. These two items will be allowed.

C. $214.76 for 'Travel costs to trial, Raton, and Library.' These items will not be allowed because the Court cannot segregate travel costs to trial and Raton from those to the library. The Court feels that travel costs to Raton and the trial might be billable on the rationale of B, above. The trip to the library is in the non-billable category.

R. Vol. I at 414. Dissatisfied with the court's award, counsel seeks our review of

---

**19.** Because no fees are awarded to Mr. Rubin it follows that his cost and expense claims must be denied as well.

disallowed items, as well as other amounts not expressly included in the final accounting. We address the items separately.

The court took, without explanation, the amount of $83.43 allowed for long distance telephone costs from counsels' first fee submission filed on March 31, 1981. R. Vol. I at 308. The court made no finding why the entire $123.09 claimed by counsel in his final submission was not allowable. Since the court generally favored granting costs for long distance calls, and the record discloses no qualitative difference between calls made before and after trial, the difference of $39.66 should be allowed. To relieve counsel and the district court of the time and expense of a further hearing on this small matter, we hereby award Mr. Lopez $39.66 additional reimbursement for long distance calls.

Travel costs of $214.76 were disallowed in their entirety because they included trips to the library which the court found to be non-compensable. The court stated that "travel costs to Raton and the trial might be billable" but no award could be made since those costs could not be segregated from the library trips.

■ Trial courts are justified in denying compensation where the affidavits and time records in the fee submissions fail to differentiate adequately between the costs attributable to billable and non-billable items. *See, e.g., Furtado v. Bishop*, 635 F.2d 915 (1st Cir.1980); *Keyes v. School Dist. No. 1, Denver, Colo.*, 439 F.Supp. 393 (D.Colo. 1977); *Arenson v. Board of Trade of Chicago*, 372 F.Supp. 1349 (N.D.Ill.1974). However, the expenses were in fact segregated in this case. Mr. Lopez' affidavit filed with the court on March 31, 1981, R. Vol. I at 309, breaks down the $214.76 expense total in paragraphs D, F, G, and H. Paragraph F specifically accounts for the library trips, combined with one deposition trip: "$31.42, gasoline; $12.59, meals; and

$36.34, room for one night in RAton (sic)." R. Vol. I at 313. The other paragraphs show expenses for trial (par. E) and trips to Raton to confer with witnesses and plaintiffs (paras. G and H). R. Vol. I at 313.

Based on the court's finding, all of the foregoing expenses with the exception of unsegregated amounts listed in paragraph F, totalling $80.35, should have been allowed. To avoid the time and expense of further proceedings, Mr. Lopez is hereby awarded $134.41 in travel expense reimbursement.

Counsel's final contention is that the court failed to address a "Cost Bill" totalling $860.29 submitted as a separate item on March 31, 1981. R. Vol. I at 330. Unaccountably that bill contained expenses for one deposition (Yarbrough) while other deposition expenses (Mares and Hayden) were included in counsel's separate "Final Accounting." And, while counsel filed three separate expense submissions, including one on January 9, 1984, he did not resubmit the 1981 cost bill; nor did he associate it with or refer to it in later filings.

The record does not disclose whether the clerk or the district court had occasion to consider counsel's cost bill. However, we note that in its order the district court referred the claimed expenses for the Mares and Hayden depositions to the clerk of court to be taxed as costs to the extent allowable. We assume the clerk will review the cost bill in question along with the other deposition costs.[20] Since there is no final judgment or any disposition shown in the record as to those amounts, there is no basis for an appeal by plaintiffs. We cannot review items which have not reached a final disposition below.

## IV

### Conclusion

We expect counsel and district courts to observe the guidelines and respect the ad-

---

20. New Mexico has a local rule relating to the allowance of deposition costs which is more strict than costs awarded under 28 U.S.C. § 1920. D.N.M.R. 15(d), Fed.R.Serv.2d (Callaghan). *See Hernandez v. George*, 793 F.2d 264 (10th Cir.1986). Thus, it is essential that the clerk of the district court and, if necessary, the court itself determine allowable costs rather than this court.

monitions set out by the Supreme Court in *Delaware Valley, Blum, Hensley,* and other cases relating to fee awards; and by this court in *Ramos* and other decisions. Other cases such as *Copeland* also provide valuable assistance. Despite the many criteria articulated in those cases, however, the establishment of fees is not an exact science. For instance, an hour viewed in isolation may appear to be reasonable, but be unreasonable in the context of the litigation as a whole.

Our instructions to district courts regarding their evaluation of tasks, hours, rates, and other matters, were never meant to cause a subtle shift in the burden of proof from counsel to court. The burden is not for the court to justify each dollar or hour deducted from the total submitted by counsel. It remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero. In the process and especially in the end result, district courts must continue to be accorded wide latitude.

In exercising their considerable discretion, within proper guidelines, district courts should above all be directed by the Supreme Court's caution that:

> These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. Hence, if plaintiffs, such as Delaware Valley, find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.

*Delaware Valley,* 106 S.Ct at 3098. "The legislative history explains that 'a reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.'

S.Rep. No. 94–1011, p. 6 (1976)." *Blum,* 465 U.S. at 897, 104 S.Ct. 1548.

The case is remanded to the district court for the purpose of amending its prior order to allow an additional $240.00 in fees, plus a 4.75% gross receipts tax, and an additional $174.07 in expenses, in accordance with the findings herein. Except to the extent modified in this opinion, the decision of the district court is affirmed.