41 F.3d 1396
 74 A.F.T.R.2d 94-7166, 94-2 USTC P 50,613
 Peggy J. NEECE and Buel H. Neece, Plaintiffs-Appellants,
v.
INTERNAL REVENUE SERVICE OF the UNITED STATES of America;
United States of America; and First National Bank
of Turley, N.A., Defendants-Appellees.
Peggy J. NEECE and Buel H. Neece, Plaintiffs-Appellants,
v.
INTERNAL REVENUE SERVICE OF the UNITED STATES of America;
United States of America; and First National Bank
of Turley, N.A., Defendants-Appellees.
 Nos. 93-5127, 94-5075.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 21, 1994.
 
 E. John Eagleton (James R. Eagleton of Eagleton, Eagleton & Harrison, Inc., with him on the brief), Tulsa, OK, for plaintiffs-appellants.
 John J. McCarthy (Michael L. Paup, Acting Asst. Atty. Gen., and Loretta C. Argrett, Asst. Atty. Gen., David English Carmack, Dept. of Justice, Frederick L. Dunn, III and Stephen Charles Lewis, U.S. Attys., with him on the brief), Washington, DC, for I.R.S. and U.S., defendants-appellees.
 Jerry Reed (Joseph R. Farris and Jody R. Nathan of Feldman, Hall, Franden, Woodard & Farris, with him on the brief), Tulsa, OK, for the First Nat. Bank of Turley, N.A., defendant-appellee.
 Before LOGAN and McWILLIAMS, Senior Circuit Judges, and BROWN, Senior District Judge.*
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 Buel and Peggy Neece, husband and wife, brought suit in the United States District Court for the Northern District of Oklahoma against the Internal Revenue Service of the United States of America ("IRS"), and the First National Bank of Turley ("the Bank"), located in Tulsa, Oklahoma, alleging that the two defendants had violated the Right to Financial Privacy Act of 1978 ("the Act"), 12 U.S.C. Secs. 3401-3422, wherein the Bank wrongfully disclosed plaintiffs' bank records to the IRS, with resultant injury to plaintiffs.
 
 
 2
 The plaintiffs sought damages from the defendants as follows: (1) $100 from each defendant as the statutory civil penalty; (2) actual damages in the amount of $1,200,000; (3) punitive damages in the amount of $100,000,000; and (4) costs and reasonable attorney's fees "believed to be in excess of $1,500,000." On cross-motions for summary judgment, the district court denied plaintiffs' motion and granted defendants' motion. The plaintiffs appealed and, on appeal, we reversed. Neece v. Internal Revenue Service of the United States, 922 F.2d 573 (10th Cir.1990).
 
 
 3
 On remand, after a trial to the court, the district court found that defendants had violated the Act and awarded plaintiffs $200 from the defendants as a civil penalty provided for by statute, and $1,580 as actual damages, together with costs and reasonable attorney's fees. In so doing, the district court specifically declined to award plaintiffs any amount as punitive damages. Plaintiffs appeal the judgment thus entered by the district court on the ground that the district court erred in fixing damages. That appeal is our No. 93-5127.
 
 
 4
 After a subsequent hearing, the district court awarded the plaintiffs the amount of $58,383.75 as a reasonable fee "for the liability phase of the case wherein Plaintiffs were undisputably successful...." As concerns the damage phase of the case, the district court awarded plaintiffs $10,500 as reasonable attorney's fees, noting that in that phase of the case plaintiffs "were only partially successful." So, the total amount of attorney's fees granted plaintiffs was $68,883.75 for "both phases of the proceedings." Also, the district court awarded plaintiffs their costs in the amount of $24,126.23. The district court further held that a "fee enhancement is not appropriate in the instant case." Plaintiffs appeal that judgment, and that particular appeal is our No. 94-5075.
 
 
 5
 Both appeals were consolidated for the purpose of oral argument, and both will be treated in this opinion. We will not set forth the background facts out of which the present controversy arises any more than necessary to an understanding of the present opinion. For a more detailed recital, see Neece v. Internal Revenue Service of the United States, 922 F.2d 573 (10th Cir.1990). We note that the differences between the plaintiff Buel Neece and the IRS are of long standing.
 
 No. 93-5127. Damages
 
 6
 As indicated, after a trial to the court, sitting without a jury, the district court held that the two defendants had violated the Act. The defendants have not appealed that ruling. Although plaintiffs asked that they be awarded damages in excess of $100,000,000, the district court awarded them damages in a total amount of $1,780. Specifically, the district court entered judgment in favor of the plaintiffs in the amount of $100 against each defendant as provided for in 12 U.S.C. Sec. 3417(a)(1). The district court also awarded plaintiffs as actual damages the amount of $1,580. This sum represented the cost of repairing two automobiles and a bulldozer belonging to the plaintiffs which were damaged when IRS representatives seized them pursuant to a jeopardy assessment.
 
 
 7
 In this appeal, the plaintiffs challenge the adequacy of the damage award, contending that the district court erred in not awarding them punitive damages, and in not awarding them additional actual damages for physical injuries and mental pain and suffering, as well as damages for having their properties encumbered over a period of some four years. Plaintiffs also contend the district court erred in not awarding them attorney's fees incurred in an earlier proceeding where the plaintiffs were successful in having the district court abate a jeopardy assessment brought by the IRS. A word about the jeopardy assessment proceeding is in order.
 
 
 8
 After the Bank's disclosure to the IRS of certain of the plaintiffs' bank records on April 26, 1988, the IRS issued a notice of jeopardy assessment to the plaintiffs. The plaintiffs sought judicial review of the assessment and were successful in that they obtained an order of the district court abating the jeopardy assessment and ordering a return of the property seized by the IRS in connection with that assessment. On appeal, we dismissed the appeal in an unpublished opinion on the ground that the district court's order of abatement, under the applicable statute, was not appealable.
 
 
 9
 12 U.S.C. Sec. 3417 provides for the penalty to be imposed on agencies or departments of the United States or financial institutions which violate the Act. That statute reads as follows:
 
 Sec. 3417. Civil penalties
 
 10
 (a) Liability of agencies or departments of United States or financial institutions
 
 
 11
 Any agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of this chapter is liable to the customer to whom such records relate in an amount equal to the sum of--
 
 
 12
 (1) $100 without regard to the volume of records involved;
 
 
 13
 (2) any actual damages sustained by the customer as a result of the disclosure;
 
 
 14
 (3) such punitive damages as the court may allow, where the violation is found to have been willful or intentional; and
 
 
 15
 (4) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
 
 
 16
 In assessing damages, the district court first held that the plaintiffs were entitled to $100 in damages from each of the two defendants as so-called statutory damages under 12 U.S.C. Sec. 3417(a)(1) for their violation of the Act. Such is not involved in this appeal. The district court next determined that plaintiffs were also entitled to the cost of repairing the damage done to two cars and a bulldozer taken in connection with the jeopardy assessment brought by the IRS as a result of the disclosure and, in this regard, set such damages at $1,580. That item of damages is not involved in this appeal.
 
 
 17
 The district court declined to award plaintiffs as actual damages any sum for physical injury and mental distress, or for embarrassment, or loss of reputation. In so doing, the district court expressed doubt that such items constituted "actual damages," as that term is used in 12 U.S.C. Sec. 3417(a)(2), but held that it did not have to decide that matter since the plaintiffs failed to prove any "compensable nonpecuniary losses." The district court also found that "no compelling testimony was offered as to any specific loss of income or business loss ... occasioned by the violation of Plaintiffs' rights" under the Act.
 
 
 18
 As stated, this was a trial to the court, sitting without a jury, and plaintiffs' position necessarily is that on the record as made, the district court was compelled to award plaintiffs damages for such items as physical injury and mental distress, embarrassment, loss of reputation, lost business opportunities, and the like, all caused, according to the plaintiffs, by the unlawful disclosure by the Bank of plaintiffs' bank records to the IRS which resulted in the jeopardy assessment. That is not our reading of the record. The judge, of course, was the one who assessed the credibility of all the witnesses, which means that a judge does not necessarily have to believe everything that a witness may testify to. Any determination of the credibility of a witness necessarily includes the right of the fact finder to disbelieve the witness. In our view, the record is such that the district court was not compelled to award plaintiffs damages beyond that which it did.
 
 
 19
 Plaintiffs did make claim in the present proceeding, as one item of damage, the attorney's fees which they incurred in their successful federal district court challenge to the jeopardy assessment.[1] The district court, in the instant case, denied that particular claim on the ground that in the proceeding brought by plaintiffs to abate the jeopardy assessment the plaintiffs had sought attorney's fees, that their request had been denied, and that, accordingly, under the doctrine of res judicata the plaintiffs could not claim as damages in the present proceedings attorney's fees incurred in the earlier proceeding.
 
 
 20
 It would appear that the plaintiffs did ask for attorney's fees in their action challenging the jeopardy assessment. However, we do not find in the record before us that plaintiffs renewed that request after the district court upheld their challenge to the jeopardy assessment. Be that as it may, we are unable to find in the record before us any order of the court in the abatement proceedings wherein it denied the request for attorney's fees. Such being the case, the district court's order in the instant case refusing to even consider plaintiffs' claim for attorney's fees incurred in the earlier proceeding in the district court solely on the ground of res judicata cannot be upheld.[2] We do note that plaintiffs argue in this Court that their claim for attorney's fees against the Bank cannot be denied on res judicata grounds since the Bank was not a party to their court challenge against the jeopardy assessment.
 
 
 21
 The plaintiffs also assert that the district court erred in refusing to award plaintiffs punitive damages. Again, the state of the record did not compel the district court to award plaintiffs punitive damages. In this regard, the district court stated that the conduct of the Bank and the IRS was not so egregious that "anyone" should have recognized it as being unlawful, citing Andrews v. Veterans Admin., 838 F.2d 418, 425 (10th Cir.1988).[3] 12 U.S.C. Sec. 3417(a)(3) provides that the district court "may" allow punitive damages where the violation of the Act is found to be willful or intentional. We decline plaintiffs' suggestion that the district court, sitting, in a sense, as a jury, had to award plaintiffs punitive damages.[4]
 
 No. 94-5075. Attorney's Fees
 
 22
 12 U.S.C. Sec. 3417(4) provides that an agency of the United States, or a financial institution obtaining financial records in violation of the Act, is liable to the customer to whom such records relate in an amount equal to the sum of, inter alia, "in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." The key words in this statute would appear to be "successful" and "reasonable."Subsequent to the district court's order of May 21, 1993, holding that the defendants had violated the Act and awarding plaintiffs as damages a total amount of $1,780, the plaintiffs filed an application for attorney's fees in the amount of $252,140.50, and costs in the amount of $24,126.23, stating that actually the total amount of attorney's fees incurred was $652,140.50, but that they would only ask for $252,140.50. Attached to the application were various affidavits and exhibits. Plaintiffs also sought enhancement of any fee awarded them based on their "establishment of new law." At the hearing on attorney's fees, one of plaintiffs' counsel testified that the request for attorney's fees in the amount of $252,140.50, instead of $652,140.50, was based in part on his recognition that plaintiffs had not prevailed on their claim for punitive damages.
 
 
 23
 As indicated, a hearing was held on plaintiffs' application for attorney's fees at which time both plaintiffs and defendants called witnesses who testified concerning the reasonableness, or lack of reasonableness, of the fees requested. At the conclusion of this hearing, the district court took the matter under advisement and issued its order on November 30, 1993. Plaintiffs have now appealed the order awarding attorney's fees, and their basic position is that the award is low and inadequate, and that the district court should have awarded them the entire amount sought, namely, $252,140.50 and then should have, under Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940-41, 76 L.Ed.2d 40 (1983), "enhanced" that award to $659,000.
 
 
 24
 In awarding attorney's fees, the district court first considered the time spent by the attorneys on the liability phase of the case from the date the action was filed on September 16, 1988, to the date of our opinion in Neece v. Internal Revenue Service of the United States, supra, which was December 19, 1990. As we understand it, plaintiffs made claim for $58,931.75 as being a reasonable attorney's fee for services rendered between those dates, and the district court, with apparently some very minor adjustments, awarded plaintiffs $58,383.75 as reasonable attorney's fees incurred in connection with the liability phase of the case.
 
 
 25
 As for legal services rendered the plaintiffs from December 19, 1990, to the date of the hearing on attorney's fees held on September 17, 1993, claim was made for $491,248.50. The district court held that the bulk of this claim was based on attorney's fees incurred in connection with plaintiffs' claims for punitive damages and emotional injury suffered by plaintiffs, and that plaintiffs were unsuccessful on both matters. It was on this basis that the district court awarded plaintiffs the sum of $10,500 as being reasonable attorney's fees for services rendered between December 19, 1990, and September 17, 1993. In this connection, the district court found that "a reasonable number of hours for case preparation and trial during the phase of the litigation is 70 hours at the rate of $150 per hour for a total fee of $10,500 for the damage phase."
 
 
 26
 We find no error in the district court's handling of plaintiffs' request for attorney's fees. In this general connection, see Mares v. Credit Bureau of Raton, 801 F.2d 1197 (10th Cir.1986) where we stated that an appellate court plays only a "limited role" in reviewing a district court's award of attorney's fees because the district court "saw the attorney's work first hand." Id. at 1200-01 (citing Poolaw v. City of Anadarko, 738 F.2d 364, 368 (10th Cir.1984), cert. denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985)). In this general connection, we spoke as follows:
 
 
 27
 Counsel contends the district court committed two errors of law in its wholesale reduction of hours: first, by failing to provide "a meaningful explanation of its judgment" so that "the court's thinking can be reviewed in a meaningful way," (citation omitted); second, by failing "to follow the task specific analysis adopted in Ramos," (citation omitted). Concerning the latter point, counsel suggests that our opinion in Ramos requires district courts "to identify what tasks must be performed to prepare for trial, what responses were necessitated to reply to the actions taken by the adversary, and what amount of time would have been required to perform each of the tasks." (citation omitted).
 
 
 28
 Ramos establishes no such procedure as a matter of necessity. There is no requirement, either in this court or elsewhere, that district courts identify and justify each disallowed hour. See New York State Association for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir.1983); Copeland v. Marshall, 641 F.2d at 903 [ (D.C.Cir.1979) ]. Nor is there any requirement that district courts announce what hours are permitted for each legal task. Such a rule would lead to disagreement of the most odious sort between court and counsel.
 
 
 29
 No objective standard exists to resolve a dispute, for example, over ten hours logged for drafting interrogatories. A lawyer may insist the time was necessary, while a court, based upon experience and judgment, including knowledge of the case itself, may declare half the time to have been unnecessary. Under the theory proposed by plaintiffs' counsel, dozens of subsidiary questions then arise. Was the lawyer interrupted while drafting? Was the draft in longhand or dictated? Did the lawyer use previous forms on a word processor? Was research necessary? Were, for example, fourteen of thirty interrogatories really necessary? Is the lawyer a slow thinker, a poor writer (occasioning many drafts), or harassing the opposition for tactical purposes?
 
 
 30
 Id. at 1202-03.
 
 
 31
 We do not believe that our resolution of the attorney's fees issue in the present case does violence to Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983). It is true that in Ramos we said, by way of dicta, that the fact that the monetary award in a civil rights action was minimal did not justify an automatic reduction of attorney's fees for the plaintiffs where the plaintiffs did prevail by vindicating an important policy consideration. Id. at 557. We do note that Ramos involved a civil rights action, which is not our case, and that the plaintiffs in Ramos sought no monetary relief. Be that as it may, in Ramos we spoke as follows:
 
 
 32
 Parties acting as private attorneys general should be reasonably compensated for their vindication of the public policy even if they themselves do not receive a large financial benefit. If the court has the impression that a plaintiff spent an excessive amount of lawyer time and simply overwhelmed the defendant in a case in which the litigation onslaught was unnecessary, the court should consider this factor in determining what amount of time was reasonably expended in the litigation. It should not be expressed as a requirement that the fee award have a particular relationship to the amount of the monetary recovery. (emphasis added).
 
 
 33
 Ramos, 713 F.2d at 557.
 
 
 34
 Nor do we believe our disposition of this particular matter offends Nephew v. City of Aurora, 830 F.2d 1547 (10th Cir.1987). That case also involved a civil rights action based on an alleged assault on the plaintiffs by police officers of the City of Aurora. After trial, a jury found that constitutional rights of certain of the plaintiffs had indeed been violated, but awarded nominal damages of $1.00. The district court later awarded plaintiffs the sum of $12,500 as attorney's fees.
 
 
 35
 In Nephew, the defendants appealed, and, on appeal, we affirmed, holding that a partially prevailing plaintiff could recover attorney's fees for legal services rendered on an unsuccessful claim, where the most important aspect of the judgment was a vindication of plaintiffs' civil rights and a "message to the police department." Id. at 1550-51. At the same time, in Nephew, we also recognized that once a fee has been determined, "the figure can be adjusted, upward or downward, according to certain factors, one of the most important of which is the 'results obtained'." Id. at 1549 (citing Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983)). Further, we emphasized that in Nephew the district court had found that the "most important aspect of the judgment was the vindication of plaintiffs' civil rights." Id. at 1550. The district court made no such finding in this case, which, of course, is not a civil rights case but is based on the Right to Financial Privacy Act. Here, the plaintiffs sought damages in the sum of $1,200,000 in actual damages and $100,000,000 as punitive damages. It would seem to us that the principal thrust of the action was money, in which they were singularly unsuccessful, obtaining a judgment for actual damages in the sum of $1780 and getting no award as punitive damages. The "results obtained" were not, in our view, "fantastic," as claimed by counsel in their brief in this Court, but de minimis.
 
 
 36
 As indicated, the district court denied any enhancement of the fee which it did award, citing Ramos v. Lamm, 713 F.2d 546, 558 (10th Cir.1983). In Ramos, 713 F.2d at 557, we spoke as follows:
 
 
 37
 We do not discount the possibility that in a particular case the plaintiff's lawyers may have performed so brilliantly that extraordinary compensation is warranted. But we think that this genius factor diminishes and eventually disappears as the number of hours expended on the case increases. A brilliant idea may shortcut one aspect of the case and save many hours, but in protracted litigation a lawyer is also likely to pursue blind alleys and expend many unproductive hours. In a case such as the one at bar, in which more than 9000 hours were reported, we do not believe that any adjustment for extraordinary performance could be warranted.
 
 
 38
 On appeal, counsel argues that because they were so "fantastically successful" in the trial court, the judge should have enhanced any award. Certainly, this is not the case where a "brilliant idea" shortcut the legal process. This case has been going on for over six years. Under the described circumstances, the district court was certainly not required to enhance the attorney's fee awarded plaintiffs.
 
 
 39
 That part of the district court's order and judgment disallowing plaintiffs' claim for attorney's fees incurred in connection with their successful court challenge to the jeopardy assessment on the ground of res judicata is reversed and remanded for further consideration. Otherwise, the order and judgment is affirmed.
 
 
 
 *
 Honorable Wesley E. Brown, Senior U.S. District Judge of the District of Kansas, sitting by designation
 
 
 [1]
 On appeal of that judgment, this Court, in an unpublished opinion, dismissed the appeal for lack of appellate jurisdiction, and in that same unpublished opinion denied "plaintiffs' request for attorney's fees and costs on appeal."
 
 
 [2]
 In this Court, plaintiffs argue that they should also be awarded the attorney's fees incurred in proceedings before the tax and bankruptcy courts. Whether that request was before the district court when it denied plaintiffs' request for attorney's fees incurred by them in their challenge to the jeopardy assessment on the grounds of res judicata is unclear. It is clear that the district court did not rule on any such request. However, if plaintiffs' request for attorney's fees and costs incurred in the tax and bankruptcy courts was presented to the district court, but not ruled on by the court, the district court, on remand, should consider, and rule on, such request
 
 
 [3]
 Andrews v. Veterans Admin. of the United States, 838 F.2d 418 (10th Cir.1988) involved the Privacy Act of 1974, 5 U.S.C. Sec. 552a. Although Andrews apparently did not involve a claim for punitive damages, we reversed the district court and held that no damages for a violation of the Privacy Act should be awarded unless the conduct of the defendant was so patently egregious and unlawful that "anyone" should have known that his conduct was unlawful. Id. at 425
 
 
 [4]
 We reject any suggestion that because the IRS has determined that it will not follow Neece v. Internal Revenue Service of the United States, 922 F.2d 573 (10th Cir.1990) "outside the Tenth Circuit," the district court was required to award plaintiffs punitive damages against the IRS