73 F.3d 1012
 Leon MALLOY, Plaintiff-Appellee,
v.
Officer William MONAHAN, individually and in his official
capacity as a police officer for the City and
County of Denver, Defendant-Appellant,
and
Denver, City and County of, Officer Mark F. Haney,
individually and in his official capacity as a
police officer for the City and County
of Denver, Defendants.
Leon MALLOY, Plaintiff-Cross-Appellant,
v.
William MONAHAN, individually and in his official capacity
as a police officer for the City and County of
Denver, Defendant-Cross-Appellee.
Leon MALLOY, Plaintiff-Appellee,
v.
DENVER, CITY AND COUNTY OF, William Monahan, individually
and in his official capacity as a police officer
for the City and County of Denver,
Defendants-Appellants,
and
Officer Mark F. Haney, individually and in his official
capacity as a police officer for the City and
County of Denver, Defendant.
 Nos. 94-1376, 94-1433 and 94-1458.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 5, 1996.
 
 Joseph J. Mellon, the Mellon Law Firm, Denver, Colorado (Paula M. Ison, with him on the briefs), for Appellee/Cross-Appellant.
 Robert M. Liechty, Halaby, Cross, Liechty, Schluter & Buck, Denver, Colorado (Theodore S. Halaby, with him on the briefs), for Appellant/Cross-Appellee.
 Before TACHA and McWILLIAMS, Circuit Judges, and ELLISON,* District Judge.
 TACHA, Circuit Judge.
 
 
 1
 Leon Malloy brought this action against Denver Police Officer William Monahan under 42 U.S.C. Sec. 1983 for the deprivation of his constitutional rights. Malloy won a jury verdict, and Officer Monahan now appeals that verdict and the district court's subsequent award of attorney's fees. Officer Monahan contends that the district court erred in (1) admitting an exhibit showing Malloy's lost future profits, (2) denying a motion for a new trial or remittitur based on the excessiveness of the verdict, and (3) improperly calculating the award of attorney's fees. Malloy cross-appeals the district court's refusal to award prejudgment interest. We exercise jurisdiction pursuant to 28 U.S.C. Sec. 1291 and affirm.
 
 Background
 
 2
 On November 14, 1990, Leon Malloy had an argument with his estranged wife at one of his properties on Milwaukee Street in Denver. Malloy left the Milwaukee Street residence and went to his home on York Street. Malloy's wife followed him to the York Street residence, and he asked her to leave.
 
 
 3
 Malloy's wife then contacted two police officers, William Monahan and Mark Haney, and told them that she had been fighting with Malloy and that she and her children needed to get into the York Street house. A few minutes later, the officers met her at the house. Officer Monahan asked her for the keys to the house and then he gave them to Officer Haney.
 
 
 4
 When Officer Haney attempted to open the door, Malloy slammed it shut. At this point, Malloy could not see the officers; he yelled to his wife that she was not coming in and that if she did not leave he would call the police. As Malloy leaned to look out a window, Officer Haney burst through the door and fell on top of him. Officer Monahan followed Haney into the house. When Malloy attempted to get up, Haney put him in a carotid hold. Monahan then sprayed Malloy with mace and began beating him with his baton. Monahan told Malloy, "We're going to teach you a lesson." Haney pulled Malloy toward the kitchen while Monahan continued beating him with the baton. Throughout the ordeal, Malloy repeatedly offered his hands to be handcuffed, but Officer Monahan responded by hitting Malloy's hands with the baton.
 
 
 5
 Once in the kitchen, Malloy twisted out of the hold and faced Haney. Haney then turned Malloy around and pushed him against the sink. Meanwhile, Monahan continued beating him with the baton. Malloy again offered his hands to be handcuffed, but Monahan used the baton as a lever to force Malloy's arm into an unnatural position behind his back. When the beating finally stopped, Malloy looked back and saw Officer Monahan with his hand on his gun. At that point, a third police officer entered the house and Malloy was taken into custody.
 
 
 6
 Malloy initially brought claims for the deprivation of his constitutional rights against the two officers and the City and County of Denver. Midway through the trial, Malloy dismissed the claim against Denver. With regard to Malloy's claims against the officers, the jury found for Officer Haney, but found against Officer Monahan in the amount of $151,055.58. In a subsequent proceeding, the district court granted Malloy's application for attorney's fees and costs in the amount of $76,320.25 (later raised to $81,377.22), denied his application for prejudgment interest, and denied Officer Monahan's motion for a new trial or remittitur. This appeal followed.
 
 Exhibit Showing Lost Future Profits
 
 7
 Before the incident with the police, Malloy had been involved in the purchase, rehabilitation, and sale of distressed residential properties. He claimed at trial that the beating left him unable to pursue his real estate ventures and thus robbed him of anticipated profits. In support of this claim, Malloy presented Exhibit 15--his calculation of profits that he would have realized absent the incident with the police. The first portion of the exhibit listed the purchase price, rehabilitation cost, commission cost, and likely sale price for each of two houses owned by Malloy at the time of the incident. The second and third portions of the chart contained similar calculations for two sets of four additional, as yet unidentified, houses. Thus the exhibit purported to describe the profits that Malloy would have made by rehabilitating and selling two houses that he currently owned, using those profits to purchase, rehabilitate, and sell four additional houses and, thereafter, purchasing, rehabilitating, and selling four more houses. Malloy anticipated total profits of $374,760.00 from these ventures.
 
 
 8
 Officer Monahan maintains that it was error for the district court to admit the exhibit both because the exhibit lacked a proper foundation and because it was unduly speculative. We review the district court's determination of the admissibility of exhibits for a clear abuse of discretion. State Office Sys., Inc. v. Olivetti Corp. of Am., 762 F.2d 843, 845 (10th Cir.1985). We first determine whether the exhibit had a proper foundation. Officer Monahan concedes that the first portion of the exhibit, detailing the purchase prices and the projected sale prices of the two houses owned by Malloy at the time of the incident, is admissible. As owner of the houses, Malloy was qualified to testify regarding their value because of his special knowledge of the properties. United States v. 10,031.98 Acres, 850 F.2d 634, 636 (10th Cir.1988). The critical question, then, is whether the remainder of the exhibit is admissible as either lay or expert opinion testimony.
 
 
 9
 Our decision in State Office Systems guides our disposition of this issue. In State Office Systems, the president of the plaintiff corporation offered his projection of future profits lost as a consequence of the defendant's breach of contract. 762 F.2d at 845-46. Given the president's knowledge of the type of business at issue and his position in the company, we ruled that he possessed sufficient expertise and personal knowledge of the company to render such an opinion. Id. at 846. Moreover, we found it significant that the defendant had ample opportunity to cross-examine the witness about the basis of his figures. Id. Thus we concluded that the trial court properly admitted the president's projections as opinion testimony under either Fed.R.Evid. 701 or Fed.R.Evid. 702. Id.
 
 
 10
 Here, Malloy offered an exhibit that projected future profits that had been lost as a consequence of the incident with the police. At the time of the incident, Malloy owned three residential properties in Denver, a house in Albuquerque, and several properties in North Carolina. He had at least fifteen years experience in the purchase, rehabilitation, and sale of residential properties. He had attended property management seminars and had read property management literature. He also possessed extensive, hands-on experience renovating residential properties. Thus, like the corporation president in State Office Systems, Malloy had sufficient expertise and personal knowledge to render an opinion as to lost future profits of his own real estate ventures. Further, Officer Monahan had the opportunity to cross-examine Malloy regarding the basis of his figures, and used that opportunity to question Malloy's experience in the real estate market, his basis for the projections, and his failure to account for the tax consequences of his ventures. Thus Exhibit 15 had a proper foundation.
 
 
 11
 We next examine whether the projections of lost future profits in Exhibit 15 were unduly speculative. "Federal standards govern the determination of damages under the federal civil rights statutes." Garrick v. City and County of Denver, 652 F.2d 969, 971 (10th Cir.1981). Accordingly, damage awards for lost future profits may not be based upon mere speculation. Sunward Corp. v. Dun & Bradstreet, Inc., 811 F.2d 511, 541 (10th Cir.1987); K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1160 (10th Cir.1985). However, awards for lost profits are acceptable so long as the lost profits can be estimated on a reasonable basis. K-B Trucking, 763 F.2d at 1160; Webb v. Utah Tour Brokers Ass'n, 568 F.2d 670, 677 (10th Cir.1977). While estimates of lost future profits may necessarily contain some speculative elements, United Steelworkers v. CCI Corp., 395 F.2d 529, 533 (10th Cir.1968), cert. denied, 393 U.S. 1019, 89 S.Ct. 627, 21 L.Ed.2d 564 (1969); United States v. Griffith, Gornall & Carman, Inc., 210 F.2d 11, 13 (10th Cir.1954), the factfinder must have before it "such facts and circumstances to enable it to make an estimate of damage based upon judgment, not guesswork," Griffith, Gornall & Carman, 210 F.2d at 13.
 
 
 12
 The projections of lost future profits in this case were based upon more than mere guesswork. As discussed above, Malloy had substantial experience in the purchase, rehabilitation, and sale of distressed properties. His estimates of the future profits of his real estate ventures were based upon his knowledge of the Denver housing market. He predicted a revitalization of the downtown Denver area driven by the new airport, the new baseball stadium, and the relocation of Elitch Amusement Park to the downtown area. More specifically, Malloy testified that he had investigated other houses in the area and had found, for example, a distressed residential property that he could have purchased for $14,000 in a neighborhood where another house had recently sold for $59,000. Thus, given the record in this case, the projections of lost future profits in the exhibit were not unduly speculative.
 
 
 13
 While we do not endorse Exhibit 15 as a model calculation of lost future profits, we conclude that it nonetheless passes muster under Fed.R.Evid. 701 or Fed.R.Evid. 702. The weight accorded to Malloy's figures was a question of fact properly left to the jury. Thus the district court did not abuse its discretion in admitting the exhibit and attendant testimony.
 
 Excessiveness of the Verdict
 
 14
 Officer Monahan next contends that the district court erred in denying his motion for a new trial or remittitur based upon the excessiveness of the award. We review the district court's denial of such a motion for a manifest abuse of discretion. Campbell v. Bartlett, 975 F.2d 1569, 1577 (10th Cir.1992). In applying this standard, we are mindful that "absent an award so excessive ... as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." Barnes v. Smith, 305 F.2d 226, 228 (10th Cir.1962).
 
 
 15
 In this case, as in most cases, "the only guide available upon review to test the properness of an award is a comparison of amount with injury." Id. at 228. The jury returned a verdict of $151,055.58. Malloy set forth extensive evidence of his injuries. His medical and psychological treatments cost $3,398.51, a sum that did not include nine additional recommended psychological treatment sessions. He took twenty-one days of sick and vacation leave from work to recuperate from the beating and to attend concomitant legal proceedings, incurring losses of $3,230.77. He also tendered $375.00 of his own funds to post bail bond following his arrest. In addition, as discussed above, he presented evidence of lost future profits of $374,760.00. Finally, the trial court instructed the jury that it could award damages for pain and suffering; we cannot say it was irrational for the jury to award such damages to Malloy as compensation for being beaten with a baton in his own home. For these reasons, we are satisfied that the award was adequately grounded in the evidence. Accordingly, we affirm the district court's decision to deny Officer Monahan's motion for a new trial or remittitur.
 
 Attorney's Fees
 
 16
 After receiving a jury verdict in his favor, Malloy requested attorney's fees and costs pursuant to 42 U.S.C. Sec. 1988. The district court held a separate hearing on the matter and awarded fees in the amount of $81,377.22. Officer Monahan contends that the district court erred in its determination of both the number of hours spent on the case and the billing rate.
 
 
 17
 We review the district court's award of attorney's fees for a clear abuse of discretion. Zuchel v. City and County of Denver, 997 F.2d 730, 745-46 (10th Cir.1993). The district court should, however, "provide a concise but clear explanation of its reasons for the fee award." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); accord Beard v. Teska, 31 F.3d 942, 955 (10th Cir.1994). We review the statutory interpretation or legal analysis that formed the basis of the award de novo. Beard, 31 F.3d at 955.
 
 
 18
 The district court may award Malloy, as prevailing party in a Sec. 1983 proceeding, a "reasonable attorney's fee." 42 U.S.C. Sec. 1988. The initial step in calculating a reasonable fee is determining a reasonable number of hours spent on the litigation. Hensley, 461 U.S. at 433, 103 S.Ct. at 1939; Zuchel, 997 F.2d at 743. This figure must then be multiplied by a reasonable hourly rate. Hensley, 461 U.S. at 433, 103 S.Ct. at 1939; Zuchel, 997 F.2d at 743. The burden of proving the claimed number of hours and rate is on the applicant, but once "the applicant ... has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee contemplated by Sec. 1988." Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); accord Homeward Bound, Inc. v. Hissom Memorial Ctr., 963 F.2d 1352, 1355 (10th Cir.1992).
 
 
 19
 The Supreme Court, recognizing that not all hours expended in litigation are normally billed to a client, noted that an applicant should exercise "billing judgment" with respect to a claim of the number of hours worked. Hensley, 461 U.S. at 437, 103 S.Ct. at 1941; accord Smith v. Freeman, 921 F.2d 1120, 1122 (10th Cir.1990). That is, "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary...." Hensley, 461 U.S. at 434, 103 S.Ct. at 1939. The district court has a corresponding obligation to exclude hours not "reasonably expended" from the calculation. Id.
 
 
 20
 Officer Monahan claims that the district court erred in its determination of the number of hours in that the court (1) had insufficient documentation to analyze some of the items in the billing report, and (2) failed to exclude time billed on certain items as unreasonably long. Thus, the issue before us is whether the district court had a sufficient basis for its determination that the claimed hours were reasonable. In analyzing this issue, we bear in mind that the district court need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a " 'request for attorney's fees should not result in a second major litigation.' " Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1203 (10th Cir.1986) (quoting Hensley, 461 U.S. at 437, 103 S.Ct. at 1941); Zuchel, 997 F.2d at 745.
 
 
 21
 In this case, the district court thoroughly reviewed Malloy's request for attorney's fees. In its Order and Memorandum of Decision, the court disallowed hours for services performed in connection with Malloy's claim against Denver and hours spent by both of his attorneys in the same depositions. The district court found the remainder of Officer Monahan's objections to specific items on the bill to be meritless; we see nothing in the bill or the record that convinces us otherwise. Thus we find that the district court's determination of the number of hours was not an abuse of its discretion.
 
 
 22
 As mentioned above, the second half of calculating an appropriate fee award is multiplying the hours by a reasonable rate. A reasonable rate is the prevailing market rate in the relevant community. Blum, 465 U.S. at 895, 104 S.Ct. at 1547; Beard, 31 F.3d at 956. As the Supreme Court explained:
 
 
 23
 [T]he burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to--for convenience--as the prevailing market rate.
 
 
 24
 Blum, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11; accord Beard, 31 F.3d at 956. The difficulty here, as in most civil rights cases, is the lack of a readily ascertainable market rate for plaintiffs' civil rights litigation, a result of the fact that most plaintiffs' attorneys charge their clients on a contingency basis.
 
 
 25
 Officer Monahan contends that given the lack of a readily ascertainable rate for plaintiffs' civil rights work, the district court should have based its award on the market rate for attorneys performing defendants' civil rights work, which is about $100 per hour in Denver. Plaintiffs' and defendants' civil rights work, however, are markedly dissimilar. Attorneys in defendants' civil rights cases are typically paid regardless of their success in a case and receive payment on a shorter billing cycle. Moreover, defendants' attorneys are sometimes guaranteed a certain amount of work from insurance pools. As the district court pointed out, "Defendants' attempt to impose the insurance pool rate on attorneys who perform plaintiff's civil rights work ignores these benefits--benefits which attorneys who perform plaintiff's civil rights work do not enjoy."
 
 
 26
 The district court applied the correct legal analysis: it evaluated the evidence to ascertain reasonable hourly rates in light of prevailing market rates in Denver. The court rejected the rate suggested by Officer Monahan and instead adopted rates of $175 per hour for lead counsel and $110 per hour for his associate. The court based this rate on the affidavits of Malloy's two attorneys and on the testimony of two experts on prevailing fees in Denver that such rates were reasonable.
 
 
 27
 Because the district court "is uniquely qualified to establish the reasonable hourly rate multiplier in computing attorneys' fees," Lucero v. City of Trinidad, 815 F.2d 1384, 1386 (10th Cir.1987), we give great deference to its factual findings. In this case, the court's carefully reasoned opinion was based upon a well-developed factual record of the prevailing market rates for plaintiffs' civil rights work in Denver. Accordingly, we find that its determination of the proper rate was not an abuse of discretion.
 
 Prejudgment Interest
 
 28
 Malloy cross-appeals the district court's refusal to award prejudgment interest. We review such denials for an abuse of discretion. Zuchel, 997 F.2d at 746. "Although prejudgment interest is ordinarily awarded in a federal case, it is not recoverable as a matter of right." Id. Instead, a two step analysis governs the determination of such an award. "First, the trial court must determine whether an award of prejudgment interest would serve to compensate the injured party. Second, when an award would serve a compensatory function, the court must still determine whether the equities would preclude the award of prejudgment interest." U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1257 (10th Cir.1988); accord Zuchel, 997 F.2d at 746.
 
 
 29
 Here, the district court stated that while prejudgment interest would serve a compensatory function, the equities of the case precluded such an award. The principal reason for the court's conclusion was that many of Malloy's economic injuries did not arise until well after the incident with the police. For example, the anticipated profits from his real estate ventures would not have been realized until several years after the date of the beating. Upon careful analysis of the district court's reasoning on this matter, we conclude that it did not abuse its discretion in refusing to award prejudgment interest.
 
 Conclusion
 
 30
 In sum, the district court's admission of Exhibit 15 and attendant testimony, its award of attorney's fees, and its denial of prejudgment interest are AFFIRMED.
 
 
 
 *
 The Honorable James O. Ellison, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation