Susan LINTZ and Connie Diecidue, Plaintiffs,

v.

AMERICAN GENERAL FINANCE, INC. and MorEquity, Defendants.

No. 98–2213–JWL.

United States District Court, D. Kansas.

Jan. 28, 2000.

Hal D. Meltzer, Turner & Boisseau, Chartered, Overland Park, KS, Gabrielle Rhodes, Brown & Nachman, P.C., Kansas City, MO, for Plaintiff Susan Lintz.

Michael P. Oliver, Norman I. Reichel, Chris R. Pace, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Plaintiff Connie Diecidue.

Lisa White Hardwick, Carole K. De-Wald, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Defendant American General Corp.

Lisa White Hardwick, Larry M. Schumaker, Carole K. DeWald, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Defendants American General Finance Inc., Morequity.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiffs Susan Lintz and Connie Diecidue filed suit against defendants alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Kansas Act Against Discrimination, K.S.A. § 44–1001 et seq. Following a trial on plaintiffs' claims, the jury found that both plaintiffs were subjected to sexual harassment and further found that defendants were liable to plaintiffs for the harassment. The jury awarded no damages to plaintiff Lintz and awarded plaintiff Diecidue $25,000 in compensatory damages. Although the issue of punitive damages was submitted to the jury, the jury declined to award punitive damages to either plaintiff.

This matter is presently before the court on plaintiff Connie Diecidue's motion to award statutory attorney's fees and nontaxable expenses (doc. # 214).[1] Plaintiff seeks fees totaling $186,710.50 and expenses totaling $ 7644.29. For the reasons set forth below, plaintiff's motion is granted in part and denied in part. Specifically, the court awards plaintiff $69,101.00 in fees and $1238.65 in expenses, for a total award of $70,339.65.

## I. Procedural Considerations

In response to plaintiff's request for fees, defendants first maintain that plaintiff failed to comply with the relevant procedural rules governing requests for fees and, accordingly, urge the court to deny plaintiff's motion in its entirety. Specifically, defendants contend that plaintiff, in her motion for fees, failed to provide defendants with an estimate of the amount sought, see Fed.R.Civ.P. 54(d)(2)(B), and, after filing her motion, failed to make a good faith effort to negotiate her fee request as contemplated by Local Rule 54.2.[2]

---

1. The court also has before it a request for fees from a separate law firm, Turner & Boisseau. The individual lawyers representing plaintiffs were employed by this firm at the onset of the litigation. Turner & Boisseau's request comes in the form of a "memorandum in support of plaintiffs' motion for award of attorneys' fees and expenses" (doc. # 227). No corresponding motion was ever filed by Turner & Boisseau and the "memorandum in support" was filed one month after the entry of judgment. Thus, Turner & Boisseau's request for fees is untimely. See Fed.R.Civ.P. 54(d)(2)(B).

2. Defendants also argue that plaintiff failed to file her memorandum in support of her motion within 30 days of filing her motion. See D.Kan. Rule 54.2. As plaintiff suggests in her reply, this argument is based on defendants' misunderstanding of the date on which plaintiff filed her initial motion. Because the certificate of service with respect to plaintiff's motion states that the motion was mailed to defendants on October 5, 1999, defendants apparently assumed that the motion was filed on October 5, 1999 and, thus, concluded that plaintiff's November 8, 1999 filing of her memorandum in support was late under Local Rule 54.2. Plaintiff's initial motion, however, was not filed until October 7, 1999. Her memorandum in support was filed within 30 days of that date and, thus, is timely under Local Rule 54.2.

The court agrees with defendants that plaintiff has failed to comply with both the letter and the spirit of the rules governing fee requests. As set forth below, however, the court declines to punish plaintiff for her counsel's shortcomings and will consider her request for fees on the merits.

■ The court first addresses defendants' argument concerning plaintiff's failure to comply with Federal Rule of Civil Procedure 54(d)(2)(B). As defendants highlight, the rule requires a plaintiff seeking fees to file a motion stating, *inter alia,* "the amount or provid[ing] a fair estimate of the amount sought." *See* Fed.R.Civ.P. 54(d)(2)(B). It is undisputed that plaintiff's motion failed to provide an estimate of the total amount of fees and expenses sought. Based on this deficiency, defendants invite the court to summarily deny plaintiff's motion for fees. The court declines this invitation for several reasons. First, defendants have not demonstrated (or even argued) that they suffered any prejudice or that they were misled in any way as a result of this omission. Second, the purpose of Title VII's attorneys' fees provision—"to make it easier for a plaintiff of limited means to bring a meritorious suit"—would be thwarted if Ms. Diecidue were unable to collect fees based solely on a technical error of her counsel. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 63, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). Stated another way, the prospect of uncompensated fees through an overly technical application of Rule 54(d)(2)(B) would deter attorneys from representing plaintiffs with limited means but meritorious claims. Finally, defendants have directed the court to no authority suggesting that a plaintiff's failure to comply with this specific provision of Rule 54(d)(2)(B) precludes consideration of that plaintiff's request for fees. In sum, finding no prejudice to defendants by the technical error of plaintiff's counsel, and bearing in mind the policy goals underlying the attorneys' fees provision of Title VII, the court rejects defendant's argument that the procedural defect in plaintiff's motion precludes consideration of her request. *See Ellis v.* *University of Kansas Medical Ctr.,* 163 F.3d 1186, 1202 (10th Cir.1998) (in light of the "recognized importance of awarding fees to encourage individuals to vindicate their civil rights," district court properly denied defendants' request for a blanket rejection of fee request).

Defendants also maintain that plaintiff's counsel refused to make any efforts whatsoever to resolve this fee dispute prior to filing their memorandum in support of their request. Plaintiff's counsel has not responded to this argument and, thus, the court takes defendants' representations as true. The conduct of plaintiff's counsel contravenes the local rules of this court and ignores the mandate of the Supreme Court. *See* D.Kan. Rule 54.2 (contemplating meaningful consultation among the parties regarding the fee award); *Blum v. Stenson,* 465 U.S. 886, 902 n. 19, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ("Parties to civil rights litigation in particular should make a conscientious effort, where a fee award is to be made, to resolve any differences."); *see also Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("A request for attorney's fees should not result in a second major litigation."). Moreover, plaintiff's counsel's failure to engage in any effort to resolve the fee dispute has caused the court to expend significant time and energy reviewing counsel's billing statements in painstaking detail. Perhaps most significant, however, is that plaintiff's counsel seem to have a history (at least in this case) of refusing to communicate with opposing counsel about certain issues when such consultation could have saved the parties and counsel a great deal of time and money. *See* discussion *infra* p. 8 (plaintiff's motions to compel summarily denied because plaintiff's counsel failed to engage in good faith efforts to confer with defendants about the underlying dispute). Nonetheless, in light of the court's ultimate decision to reduce generally plaintiff's fee award based on her counsel's unrealistic assessment of the monetary value of plaintiff's claims, the court de-

clines to disregard or reduce plaintiff's fee request based on counsel's deficiencies described above. The court admonishes counsel in the strongest terms, however, that engaging in meaningful consultation with opposing counsel prior to submitting a fee request to this court is required by rule in order to attempt to save the parties time and money in litigating unnecessary issues and that a failure to abide by this rule in the future could result in monetary sanctions being levied against counsel.

## II. Attorneys' Fees

The court now turns to address the merits of plaintiff's fee request. A district court may award attorneys' fees to the prevailing party in a Title VII action. *See* 42 U.S.C. § 2000e–5(k). Under Title VII, a prevailing plaintiff is "ordinarily to be awarded attorney's fees in all but special circumstances." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 417, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1492 (10th Cir.1994). Defendants do not dispute that plaintiff Diecidue is a prevailing party; rather, defendants contend that plaintiff's request for fees and expenses is unreasonable.

Once a party has established its entitlement to fees as a "prevailing party," the court must determine what fee is "reasonable." *Ellis,* 163 F.3d at 1202. As courts have long recognized, the most useful starting point for determining the amount of a reasonable fee is the "lodestar" figure—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See id.* (quoting *Beard,* 31 F.3d at 955) (quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933))); *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1249 (10th Cir.1998) (quoting *Jane L. v. Bangerter,* 61 F.3d 1505, 1509 (10th Cir. 1995)). Once the court determines the lodestar, it must then determine whether any upward or downward adjustment should be made to the lodestar "to account for the particularities of the suit and its outcome." *See Phelps v. Hamilton,* 120 F.3d 1126, 1131 (10th Cir.1997) (citing

*Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933).

### A. Hours Reasonably Expended

In calculating the number of hours reasonably spent by counsel for the party seeking fees, the court must ensure that counsel has exercised proper "billing judgment." *Case,* 157 F.3d at 1250 (citing *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983)). As the Tenth Circuit recently reiterated, billing judgment "consists of winnowing the hours actually expended down to the hours reasonably expended." *See id.* (citing *Ramos,* 713 F.2d at 553). An analysis of whether counsel has exercised proper "billing judgment" requires a two-step inquiry. First, the court examines whether specific tasks are properly chargeable at all. *See id.* ("Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable.") (citing *Ramos,* 713 F.2d at 553–54) (giving as an example time spent doing background research). Second, after examining the specific tasks and whether they are properly chargeable, the court examines the hours expended on each task to determine if they are reasonable. *Id.* However, the court "need not identify and justify every hour allowed or disallowed, as doing as would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Ellis,* 163 F.3d at 1202 (quoting *Malloy,* 73 F.3d at 1018) (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933); *accord Case,* 157 F.3d at 1250. At all times, counsel for the party seeking fees has the burden to prove that their hours were reasonable. *See, e.g., Case,* 157 F.3d at 1259.

### 1. Tasks properly chargeable

In response to plaintiff's motion, defendants urge that certain tasks identified in the time records of plaintiff's counsel are not properly chargeable at all.

Along those lines, defendants first challenge the time plaintiff's counsel spent researching, discussing and drafting a joint prosecution agreement with plaintiff Susan Lintz's counsel.[3] According to defendants, the need for the agreement was caused by the personal career decisions of both plaintiffs' counsel. Moreover, defendants emphasize that this time did very little to advance plaintiff's legal claims. Counsel for plaintiff urges that the joint prosecution agreement was designed to prevent duplicative efforts by counsel for both plaintiffs and that, in effect, the agreement actually saved a substantial amount of fees. Plaintiff's counsel have adequately met their burden of showing that this time is compensable. The court will not deduct this time from plaintiff's fee request.

Defendants next contend that plaintiff should not be compensated for time spent researching legal claims she never asserted during the litigation (*i.e.*, battery and negligent retention). In that same vein, defendants maintain that plaintiff should not recover for time spent researching the feasibility of expert testimony because plaintiff never used any experts in the course of the litigation and that plaintiff should not recover for time spent investigating potential witnesses for trial because those witnesses were never called to testify at trial. Litigants, however, must be given some latitude to explore alternative legal theories and reasonable trial strategies even though counsel may ultimately determine not to pursue those avenues. The court concludes that the time is compensable.

■ Next, defendants challenge plaintiff's effort to recover fees related to various motions that plaintiff filed during the course of the litigation. Specifically, plaintiff seeks to recover fees for time spent researching and preparing several motions to compel, two motions for sanc-

tions, and a surreply to defendants' motion for summary judgment. According to defendants, no fees should be awarded with respect to the motions to compel because those motions were all denied by the court. Plaintiff's counsel have not responded to defendants' argument, other than by characterizing this case as "hard fought" with "extensive discovery." The record in this case reveals that plaintiff's first motion to compel was rendered moot after the parties resolved the dispute; that plaintiff's second motion to compel was denied on the merits; and that plaintiff's third and fourth motions to compel were summarily denied by Magistrate Judge Rushfelt because plaintiff failed to engage in good faith efforts to confer with defendants about the underlying dispute. There is no evidence that plaintiff's first two motions to compel were frivolous or unnecessary. The court concludes that time expended on these motions is compensable. With respect to plaintiff's third and fourth motions to compel, however, the court finds that defendants should not have to compensate plaintiff (or her counsel) for preparation of those motions when Judge Rushfelt summarily denied those motions based on plaintiff's counsel's failure to engage in good faith efforts to resolve the dispute prior to filing the motions. The court will deduct all hours associated with the preparation of plaintiffs' third and fourth motions to compel. Specifically, the court will deduct 6.7 hours from Mr. Pace's time.

■ With respect to plaintiff's motions for sanctions, defendants maintain that fees are inappropriate because one sanctions motion was denied and the other resulted in a $500 assessment against defendants (thus, plaintiff has already been awarded a reasonable amount for her prevailing motion). The court will strike all time entries relating to plaintiff's second

---

**3.** At the time this litigation commenced, plaintiff Diecidue and plaintiff Lintz were represented by Christopher Pace and Gabrielle Rhodes. Mr. Pace and Ms. Rhodes were employed by the same law firm. During the litigation process, Mr. Pace and Ms. Rhodes left that firm and each became associated with a different firm. Mr. Pace retained plaintiff Diecidue as a client and Ms. Rhodes retained plaintiff Lintz as a client.

motion for sanctions, or 19.1 hours from Mr. Pace's time. Although the motion was granted in part, Magistrate Judge Rushfelt already concluded that "a reasonable attorneys' fee for time spent preparing and filing plaintiffs' second motion for sanctions and obtaining this order is $500.00" and awarded plaintiffs Diecidue and Lintz that amount. Thus, plaintiff is not entitled to additional fees in connection with this motion. With respect to plaintiff's first motion for sanctions, there is no evidence that the motion was meritless. In such circumstances, the court concludes that the time expended with respect to the unsuccessful motion for sanctions is compensable. *See Cadena v. Pacesetter Corp.,* No. Civ.A. 97–2659–KHV, 1999 WL 450891, at *2 (D.Kan. Apr. 27, 1999) (time expended on unsuccessful motion for sanctions is compensable in the absence of evidence that the motion was "baseless").

■ With respect to plaintiff's surreply, defendant maintains that fees should not be awarded because the court denied plaintiff leave to file her surreply and expressly disregarded the proposed surreply in considering defendants' motion for summary judgment. The court agrees that defendants should not have to compensate plaintiff or her counsel for this wasted effort. In any event, plaintiff's counsel have not responded to this argument and, thus, have not met their burden of demonstrating that this time is compensable. The court will strike all time entries concerning the preparation of plaintiff's surreply. Specifically, the court will deduct 11.6 hours from Mr. Pace's time; .60 hours from Terri Stanton's time; .50 hours from Glenn Grayson's time; 2.0 hours from Frances Williams' time; and 1.5 hours from Shirley Macdonald's time.

Defendants also object to plaintiff's attempt to recover fees for time spent correcting errors and omissions in plaintiff's discovery responses and other papers. Again, plaintiff's counsel have not responded to defendants' argument and, accordingly, have not met their burden of showing that such time is compensable. The court will strike 5.1 hours from Terri Stanton's time.

■ Defendants further maintain that plaintiff should not recover any fees for 33.4 hours of time expended in connection with plaintiff's pursuit of legal theories that were not successful, including plaintiff's constructive discharge claim (dismissed by the court on summary judgment); a joint employer liability theory (voluntarily dismissed); plaintiff's punitive damages claim (denied by the jury); and plaintiff's opposition to defendants' Rule 412 motion (the motion was granted). Plaintiff's counsel urge that such time is compensable because plaintiff prevailed on her central claim (sexual harassment) and her unsuccessful claims and theories were based on the same "common core of facts" as her sexual harassment claim. This argument finds support in Tenth Circuit case law. *See, e.g., Roberts v. Roadway Exp., Inc.,* 149 F.3d 1098, 1111 (10th Cir.1998) (affirming district court's decision not to reduce fee award for failure to prevail on hostile work environment claim where plaintiff prevailed on retaliation claim; claims were "related and dependant on a common core of facts"). The court concludes that the time plaintiff's counsel spent on these matters is compensable. Many of the incidents alleged by plaintiff in support of her sexual harassment claim, for example, necessarily supported her constructive discharge claim. With respect to plaintiff's punitive damages claim, plaintiff's counsel presumably raised that claim in good faith and, although the jury decided not to award punitive damages, the evidence would have supported a modest award. In such circumstances, plaintiff's counsel should not be punished for raising viable (although ultimately unsuccessful) theories of recovery and damages. *See Robinson v. City of Edmond,* 160 F.3d 1275, 1283 (10th Cir.1998) ("Litigants should be given the breathing room to raise alternative legal grounds without fear that merely raising an alternative the-

ory will threaten the attorney's subsequent compensation.")

Defendants next challenge plaintiff's fee request to the extent she seeks to recover fees relating to the deposition of EEOC investigator Billie Ashton and plaintiff's efforts to introduce an EEOC determination letter at trial. Plaintiff's counsel have not responded to defendants' argument and, thus, have failed to meet their burden of demonstrating that such time is compensable. The court will strike 13.6 hours from Mr. Pace's time and 2.9 hours from Kyle Roehler's time.

Finally, defendants contend that plaintiff should not recover fees for time spent by her counsel on matters related exclusively to co-plaintiff Susan Lintz. Again, plaintiff's counsel have not responded to this argument and, accordingly, have not met their burden of showing that the time is compensable. The court will exclude all hours expended on matters related exclusively to Susan Lintz, or .80 hours from Mr. Pace's time and 2.5 hours from Terri Stanton's time.

### 2. Reasonableness of hours expended on tasks

 In addition to challenging the compensability of certain tasks, defendants object to the number of hours plaintiff's counsel expended on certain tasks, including the pretrial conference, the deposition of defendant AGF's corporate representative, and settlement efforts. With respect to the pretrial conference, the time records of plaintiff's counsel reflect that plaintiff's counsel spent 16 hours preparing for and attending the pretrial conference in this case. This figure does not include time spent preparing the proposed pretrial order. According to defendants, this number of hours is unreasonable, particularly because the conference itself lasted less than 45 minutes. Plaintiff has not responded to this argument and offers no explanation of the time expended. The court has reviewed plaintiff's time records concerning the pretrial conference and has reviewed the file of this case concerning the pretrial conference, which was con-

ducted by Magistrate Judge Rushfelt. Several discovery motions were pending before Judge Rushfelt at the time of the pretrial conference and, thus, it was reasonable for plaintiff to spend some time reviewing those motions in advance of the conference. Of course, time spent attending the conference itself is reasonable. With respect to other time expended, however, including time spent reviewing "the entire file" and general entries about "preparing" for the conference, plaintiff's counsel have not met their burden of demonstrating that such time is reasonable. Thus, the court will deduct that time from counsel's billing records. Specifically, the court deducts 6.4 hours from Mr. Oliver's time and 1.0 hour from Mr. Pace's time.

 The time records of plaintiff's counsel reflect that counsel spent 44.7 hours preparing for and taking the deposition of AGF's corporate representative. According to defendants, this number of hours is unreasonable, particularly in light of the fact that the deposition itself spanned less than 7 hours. Again, plaintiff's counsel have offered no explanation for the time expended in connection with this deposition. Plaintiff's counsel, then, have failed to meet their burden of showing that 44.7 hours is reasonable for the deposition of AGF's corporate representative. The court has reviewed the time entries relating to the deposition of AGF's corporate representative and finds 44.7 hours to be excessive. This is particularly true because many of the entries simply state "continue preparation for deposition of corporate rep" with no explanation of what the "preparation" entailed. In short, the court concludes that 16.7 hours is a reasonable amount of time to prepare for and take the deposition of this witness. Thus, the court will deduct 28 hours from Mr. Pace's time.

 The billing records of plaintiff's counsel reflect that 34.3 hours were spent on matters relating to mediation and settlement efforts. According to defendants, plaintiff should not recover any fees with

respect to these efforts because she rejected two settlement offers that would have at least doubled her jury award. In the alternative, defendants request the court reduce the number of hours plaintiff's counsel spent researching mediators, discussing case evaluation and preparing for the mediation. The court declines defendants' invitation to exclude every hour related to mediation or settlement efforts. Certainly, some time spent related to those efforts is compensable. To hold otherwise might discourage counsel for plaintiffs from exploring settlement possibilities. Such a result would contravene the "strong preference" expressed by Congress in enacting Title VII "for encouraging voluntary settlement of employment discrimination claims." *See Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981); *see also Sears v. Atchison, Topeka & Santa Fe Ry., Co.,* 749 F.2d 1451, 1455 (10th Cir.1984) ("Surely the law should encourage settlement of Title VII disputes."). With respect to the number of hours plaintiff's counsel expended related to settlement efforts, however, plaintiff's counsel have failed to meet their burden of showing that 34.3 hours are reasonable. In fact, plaintiff's counsel have made no arguments whatsoever relating to these hours. The court has reviewed counsel's time records and concludes that 20.1 hours is reasonable to prepare for and attend the mediation scheduled in this case and to engage in other settlement discussions. The court will deduct 2.0 hours from Mr. Oliver's time and 12.2 hours from Mr. Pace's time.

### 3. Miscellaneous entries

■ Defendants also challenge nearly 120 hours of time entries that, according to defendants, are deficient or unreasonable because the entries contain incomplete or non-specific descriptions of tasks performed; reflect an inordinate amount of time expended in relation to the task description; reflect tasks unrelated to the litigation; reflect time spent in travel, making deliveries, and filing papers with the court; and/or reflect time spent on administrative or scheduling matters between plaintiff's counsel and staff. Plaintiff does not address these arguments in her papers. The court has reviewed the time entries highlighted by defendants and concludes that many of the entries must be stricken because they are too vague (*e.g.*, "delivered documents to _____;" "telephone call to co-plaintiff's attorney;"). Moreover, because plaintiff's counsel has failed to establish (or even argue) that time spent traveling is normally billed to the client, they have not met their burden of establishing that such time is compensable. The court will deduct from the billing statements those entries that reflect time spent traveling. Similarly, plaintiff's counsel have not proven that time spent dealing with administrative or scheduling matters is normally billed to the client. Thus, the court will strike those entries that reflect time spent on administrative or scheduling matters (*e.g.*, "telephone call to client re: billing matters;" "conference with paralegal re: file management"). In sum, the court deducts 5.8 hours from Ronald Jones' time; .80 hours from Charles Siecgrist's time; 8.0 hours from Frances Williams' time; 1.3 hours from Melissa Root's time; 25.5 hours from Terri Stanton's time; and 25.0 hours from Mr. Pace's time. With respect to defendants' arguments that certain entries reflect tasks unrelated to this litigation or an inordinate time expended in relation to the task description, defendants have failed to specify in their papers which entries suffer from these deficiencies. Thus, the court will not deduct any hours based on these alleged deficiencies.

Finally, defendants object to certain entries that, according to defendants, are duplicative of prior entries. Defendants request the court strike these entries, totalling 3.1 hours. Plaintiff's counsel have not addressed these entries and, accordingly, have not met their burden of proving that the entries are compensable. The court will not consider these hours in calculating the lodestar.

## B. Reasonable Hourly Rate

 To complete the lodestar calculation, the court now determines a reasonable hourly rate. *See Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir.1998). A reasonable rate "is the prevailing market rate in the relevant community." *Id.* (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir.1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984))).[4] The relevant market rate is the "price that is customarily paid in the community for services like those involved in the case at hand." *Id.* (quoting *Beard v. Teska*, 31 F.3d 942, 956 (10th Cir.1994)). Thus, plaintiff Diecidue bears the burden of showing that the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See id.* (quoting *Malloy*, 73 F.3d at 1018) (quoting *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541))).

In her motion for fees, plaintiff requests an hourly rate of $225 for Michael Oliver, who served as lead trial counsel in the case, and an hourly rate of $185 for Christopher Pace, an associate-level attorney who billed the vast majority of the nearly 900 hours of attorney time billed in the case, and Glenn Grayson, another associate-level attorney who billed only a handful of hours in the case.[5] In support of her request, plaintiff submits only the affidavits of Mssrs. Oliver, Pace and Grayson.

### 1. Lead counsel

 According to his affidavit, Mr. Oliver has been a full-time "trial lawyer" since 1982 and, in that capacity, has tried more than "120 jury trials to verdict on a variety of subjects, including complex product liability cases and medical malpractice cases." In addition, Mr. Oliver avers that he is "national counsel for a nationwide products liability suit, lead defense counsel for a large product class action lawsit [sic], and local counsel for defendants in 200 Fen-phen lawsuits." Finally, based upon Mr. Oliver's purported knowledge of "the rates for attorneys in the Kansas City area with experience comparable" to his own, Mr. Oliver avers that a rate of $225 "is a reasonable fee for time." Defendant urges that plaintiff's limited success at trial does not warrant an hourly rate higher than the rates previously applied by the judges in this district for lead counsel.

Plaintiff has not met her burden of demonstrating that her requested rate of $225 for Mr. Oliver is reasonable. More specifically, plaintiff has not shown that her requested rate is in line with those prevailing in the Kansas City metropolitan area "for similar services by lawyers of reasonably comparable skill, experience, and reputation." In fact, plaintiff has failed to provide any market evidence whatsoever.[6] *Cf. Ellis*, 163 F.3d at 1203–04 (plaintiff's evidence of prevailing market rate included affidavits submitted by civil rights attorneys practicing in the Kansas City area regarding hourly rates for similar cases). Defendant has also failed to provide any market evidence, but simply directs the court to this district's recent precedent with respect to hourly rates in employment discrimination cases.

Because the court does not have before it any evidence of prevailing market rates, it may use other relevant factors, including

4. The relevant community here is the Kansas City metropolitan area.

5. Plaintiff also requests an hourly rate of $185 for Joel Krieger and James Mowbray, two other associate-level attorneys. Mr. Krieger billed 1.5 hours in the case and Mr. Mowbray billed 1 hour in the case.

6. The affidavit of Mr. Oliver is insufficient to meet plaintiff's burden. *See Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541 ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skills, experience, and reputation.") (emphasis added).

its own knowledge, to establish the rate. *See Case*, 157 F.3d at 1257.[7] A review of recent decisions from this district reveals that the prevailing market rate for lead counsel in employment discrimination or analogous litigation ranges from $120 per hour to $190 per hour depending on counsel's experience in the field. *See Baty v. Willamette Indus., Inc.*, No. Civ.A. 96–2181–GTV, 1999 WL 713959, at *2 (D.Kan. Aug. 16, 1999) (rate of $155 per hour is reasonable in light of counsel's experience); *Glover v. Heart of Am. Management Co.*, No. Civ.A. 98–2125–KHV, 1999 WL 450895, at *8–9 (D.Kan. May 5, 1999) (rate of $120 per hour is reasonable for counsel with three years experience as an attorney, where twenty percent of practice involved labor and employment law); *Cadena v. Pacesetter Corp.*, No. Civ.A. 97–2659–KHV, 1999 WL 450891, at *5–6 (D.Kan. Apr. 27, 1999) (rate of $155 per hour is reasonable for counsel with eight years of experience in employment discrimination litigation); *Hampton v. Dillard Dept. Stores, Inc.*, No. Civ.A. 97–2182–KHV, 1998 WL 724045, at *2 (D.Kan. Sept. 24, 1998) (rate of $190 per hour is reasonable for counsel with twenty-eight years of experience in "cutting edge civil rights litigation"). Although Mr. Oliver has seventeen years of experience as a trial lawyer, he has not shown that he has any experience or expertise in employment discrimination or analogous litigation. Thus, it is reasonable to infer that Mr. Oliver could not command his normal hourly rate of $225 in the marketplace for employment discrimination litigation. *See Case*, 157 F.3d at 1257 (district court may lower the rates normally charged by attor-

neys who have not shown that they are experts in civil rights or analogous litigation). Moreover, the court also considers the quality of counsel's performance in the case when placing a value on counsel's services. *See id.* (citing *Ramos*, 713 F.2d at 555). Mr. Oliver's performance at trial, while competent, was not extraordinary and it did not produce the kind of results that would support a higher market rate. *Cf. Hampton*, 1998 WL 724045, at *2 (adjusting hourly rate upwards in light of counsel's "fine performance at trial" and the "excellent outcome" for plaintiff). On balance, the court concludes that an hourly rate of $155 is reasonable in this case.[8] The court will apply that rate to the hours reasonably expended by Mr. Oliver.

2. Associate counsel

The record reflects that Mr. Pace has been practicing law since 1995. According to Mr. Pace, he spent thirty percent of his time practicing in the employment law field for the first two and one-half years of his practice. For the past two years, he has practiced employment discrimination law almost exclusively. Mr. Pace has also tried a handful of cases in the employment law field. Mr. Grayson has been practicing law since 1982. Although he has spent the majority of his practice working in the employment law field, the record does not indicate whether Mr. Grayson has any litigation or trial experience. Based solely on Mr. Oliver's "knowledge of fees for associates," plaintiff's counsel claim that an hourly rate of $185 is reasonable for the work of Mssrs. Pace and Grayson.

Plaintiff has failed to meet her burden of demonstrating that the requested rate of $185 for Mssrs. Pace and Grayson is reasonable.[9] Again, plaintiff has not provided

---

7. If plaintiff's counsel had presented the court with evidence of prevailing market rates, the court certainly would have considered that evidence in determining the appropriate rate. *See Ellis*, 163 F.3d at 1203 (citing *Case*, 157 F.3d at 1255).

8. The undersigned judge has previously applied an hourly rate of $145 for lead counsel in sexual harassment cases, based on the skills and experience of counsel in those cases. *See Deters v. Equifax Credit Information Servs., Inc.*, No. 96–2212–JWL, 1998 WL

12119, at *1 (D.Kan. Jan. 6, 1998); *Baty v. Willamette Indus., Inc.*, 985 F.Supp. 1002, 1005 (D.Kan.1997). As Judge VanBebber recently recognized, however, "[t]he prevailing market rate in Kansas City has increased since that time." *See Baty v. Willamette Indus., Inc.*, No. Civ.A. 96–2181–GTV, 1999 WL 713959, at *2 (D.Kan. Aug. 16, 1999) (concluding that a rate of $155 is reasonable).

9. Plaintiff has provided the court with no information, much less any affidavits, regarding the experience or skill of Mssrs. Krieger

the court with any market evidence. Previously, the undersigned judge has applied an hourly rate of $100 for second-chair, associate-level attorneys. *See Deters,* 1998 WL 12119, at *1–2; *Baty,* 985 F.Supp. at 1005. More recent cases from this district, however, suggest that the prevailing market rate for associates has increased since that time. *See Glover,* 1999 WL 450895, at *8–9 (rate of $90 per hour is reasonable for attorney who graduated from law school in 1995, had "two years of experience as a solo practitioner, including civil rights cases"); *Cadena,* 1999 WL 450891, at *6 (rate of $120 per hour is reasonable for attorney with six years of litigation experience; same rate applicable for attorney who graduated from law school in 1992); *Hampton,* 1998 WL 724045, at *2 (rate of $115 per hour is appropriate for attorney who graduated from law school in 1991, had little more than one year of civil rights litigation experience, gave a "fine performance" at trial and obtained an "excellent outcome" for plaintiff). Comparing Mssrs. Pace's and Grayson's experience to that of counsel in the aforementioned cases, the court concludes that an hourly rate of $110 is reasonable for the associate counsel work in this case and the court will apply that rate to the hours reasonably expended by Mssrs. Pace and Grayson.[10]

### C. Calculation of the Lodestar

Based on the rates and hours discussed above, the court concludes that the lodestar figure for this case is $103,651.50.[11] This amount is calculated as follows:

| TIMEKEEPER | RATE | HOURS | FEES |
|---|---|---|---|
| Michael Oliver | 155.00 | 201.2 | 31,186.00 |
| Chris Pace | 110.00 | 541.2 | 59,532.00 |
| Glenn Grayson | 110.00 | 15.7 | 1727.00 |
| Joel Krieger | 110.00 | 1.5 | 165.00 |
| James Mowbray | 110.00 | 1.0 | 110.00 |
| Kyle Roehler | 65.00 | 18.4 | 1196.00 |
| Doreen Colwell | 65.00 | 6.7 | 435.50 |
| Michael Kauphusman | 65.00 | 5.5 | 357.50 |
| Terri Stanton | 65.00 | 137.0 | 8905.00 |
| Charles Siecgrist | 25.00 | 0.0 | 0.00 |
| Frances Williams | 25.00 | 0.0 | 0.00 |
| Melissa Root | 25.00 | 0.0 | 0.00 |
| Ronald Jones | 25.00 | 0.0 | 0.00 |
| Shirley Macdonald | 25.00 | 1.5 | 37.50 |

### D. Reduction of the Lodestar

Having determined the lodestar amount, the court now considers whether any adjustment to that amount is necessary. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. According to defendants, the court should reduce the lodestar amount to a figure that more closely approximates the damages recovered by plaintiff in order to avoid a windfall to attorneys who seriously misjudged the value of their client's claims. In that regard, defendants highlight plaintiff's $25,000 recovery as compared to plaintiff's pretrial demand of $3.5 million and her request to the jury for more than $13.2 million. Plaintiff, of course, objects to any reduction in the lodestar amount. According to plaintiff, she "furthered the cause of laws against sexual harassment" by exposing the harassment in defendants' workplace and, accordingly, she is entitled to the full lodestar amount "for pursuing these important societal goals."

It is well settled in the Tenth Circuit that "there are legitimate cases in which a large general reduction in requested fees is warranted." *See Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1253 (10th Cir.1998) (citing *Mares v. Credit Bureau of Raton,* 801 F.2d 1197 (10th Cir.1986)). Such a reduction is permissible "so long as there is sufficient reason for its use." *Id.* (quoting *Mares,* 801 F.2d at 1203). In *Mares,* for example, the district court reduced the hours claimed by 77 percent, in large part because of counsel's inexperience. *See Mares,* 801 F.2d at 1202–03. The Tenth Circuit affirmed this reduction, noting that the district court's finding was

---

and Mowbray. *See supra* note 5. Clearly, plaintiff has failed to meet her burden of demonstrating that $185 per hour is a reasonable rate for these individuals.

10. The court applies the same rate to hours reasonably expended by Mssrs. Krieger and Mowbray. *See supra* notes 5 and 9.

11. Defendants do not object to plaintiff's proposed rates of $65 for paralegals and $25 for clerks. Thus, the court will use these rates in its calculation of the lodestar.

clearly supported since counsel had been in practice just a year when he took the case, conceded his lack of experience, and billed every hour logged. *See id.* at 1204. The Circuit further noted that counsel "failed entirely on his major theory of damages," "grossly overevaluated what the case would warrant by way of punitive damages" and, worse yet, "may have blown the case far out of proportion on the mistaken belief that it would yield a big judgment and, consequently, a very large fee." *See id.* As set forth in more detail below, the court agrees with defendants that a reduction in the lodestar amount is appropriate under the circumstances presented here.

A brief review of the facts of the case, as relevant to plaintiff Diecidue's claims, will be helpful to an understanding of the court's decision to reduce the lodestar amount. Plaintiff worked for defendants for approximately 28 days. Plaintiff testified at trial that, during this 28–day period, she was subjected to sexual harassment at the hands of her supervisor, Scot Johansen. Most of the harassment about which plaintiff testified was verbal in nature and could be characterized as unwelcome and offensive amorous advances made by Mr. Johansen. Plaintiff left her employment with defendants and, within a few weeks, found a comparable job. It was undisputed at trial that plaintiff never complained to anyone in management about Mr. Johansen's conduct. In a written exit questionnaire, however, plaintiff stated that she had been sexually harassed by Mr. Johansen. Despite the fact that plaintiff was no longer employed by defendants, defendants' human resources personnel contacted plaintiff immediately upon receiving her exit questionnaire. Plaintiff refused to provide defendants with any information and directed all inquiries to her counsel. Nonetheless, defendants' management team conducted a prompt and thorough investigation of plaintiff's allegations and, ultimately, terminated Mr. Johansen's employment.

In the face of these facts, plaintiff demanded more than $3 million from defendants prior to trial to settle her sexual harassment claim.[12] She and co-plaintiff Susan Lintz rejected an offer of judgment for $200,000 and proceeded to trial. In his closing argument, Mr. Oliver suggested to the jury that an appropriate punitive damages award would be upwards of $13 million. Mr. Oliver also asked the jury to award a significant amount of compensatory damages for plaintiff's emotional distress. The jury declined to award punitive damages and awarded plaintiff $25,000 in compensatory damages.

 Plaintiff's counsel, like counsel in *Mares,* significantly overvalued plaintiff's claims, both in terms of compensatory damages and punitive damages.[13] As an initial matter, plaintiff's counsel should have known (and presumably did know) that plaintiff could not recover more than $300,000 in compensatory and punitive damages. *See* 42 U.S.C. § 1981a(b)(3). Moreover, for purposes of assessing plaintiff's punitive damages claim, the relevant conduct here was not exceptionally egregious. Plaintiff was subjected to unwanted sexual advances for a very short duration. While such conduct was certainly sufficient to give rise to liability, the conduct was not the type of demeaning or degrading gender-based taunting, occurring over a long period of time, found in those cases in which juries in this district have awarded large punitive damages. *Cf. Baty v. Willamette Indus., Inc.,* 985 F.Supp. 987 (D.Kan.1997) (jury awarded plaintiff $500,-000 in punitive damages on sexual harassment claim where plaintiff was subjected to a "steady stream of vulgar and offensive

**12.** This figure has been provided by defendants in their papers. Plaintiff has not challenged defendants' representations.

**13.** In addition, although the court dismissed plaintiff's constructive discharge claim at the summary judgment stage, plaintiff's potential damages in terms of back pay, assuming that claim had survived, would have been very limited.

epithets because of her gender" over several months) (award reduced by court consistent with statutory cap); *Deters v. Equifax Credit Information Servs.*, 981 F.Supp. 1381 (D.Kan.1997) (jury awarded plaintiff $1 million in punitive damages on sexual harassment claim where plaintiff testified that she was frequently called a "f___g c___") (award reduced by court consistent with statutory cap). In addition, as soon as defendants here learned about plaintiff's complaints, they took prompt remedial action. *Cf. Baty*, 985 F.Supp. at 993 (plaintiff presented evidence that management did not respond appropriately to her complaints and, in fact, condoned and enjoyed the offensive conduct); *Deters*, 981 F.Supp. at 1383 (plaintiff's evidence entitled jury to conclude that management's responses to plaintiff's complaints were "woefully inadequate"). In the same vein, in light of the fact that plaintiff was subjected to the harassment for a short duration (and in the absence of any testimony concerning serious long-term effects), plaintiff's counsel should have recognized that any compensatory damages award might be quite limited. *Cf. Baty*, 985 F.Supp. at 995–96 (jury awarded plaintiff compensatory damages of $120,000 on sexual harassment claim where, in addition to plaintiff's own testimony about emotional and physical effects of harassment, psychological expert testified that plaintiff suffered from post-traumatic stress disorder as a result of the conduct). Worse yet, for purposes of analyzing plaintiff's fee request, plaintiff's counsel spent time commensurate with their misguided assessment of plaintiff's claims. In other words, a lawyer who had appropriately analyzed the monetary value of plaintiff's claims would have brought this case through trial, achieved a similar result, and spent significantly less time than plaintiff's counsel spent here.

In sum, plaintiff's counsel appear to have significantly misjudged their evaluation of what plaintiff's claims were worth in terms of damages. Moreover, plaintiff rejected an offer of judgment that was substantially higher than the jury award.

*See Dalal v. Alliant Techsystems, Inc.*, 182 F.3d 757, 761–62 (10th Cir.1999) (affirming district court's decision to reduce lodestar amount in light of plaintiff's rejection of offer of judgment). For all of the reasons set forth above, the court concludes that the lodestar amount of $103,651.50 is unreasonable and that a reduction of one-third is appropriate. Thus, the court awards plaintiff $69,101.00 in fees.

### III. Expenses

 Plaintiff also seeks as part of her fee request $7644.29 for expenses incurred during the litigation process. As the Tenth Circuit has reiterated, expenses incurred in representing a client in civil rights and analogous cases should be included in the attorney's fee award if such expenses are reasonable and "usually billed in addition to the attorney's hourly rate." *See Case*, 157 F.3d at 1257 (citing *Ramos*, 713 F.2d at 559). The attorneys "requesting fees bear the burden of establishing the amount of compensable expenses to which they are entitled." *Id.* (citing *Mares*, 801 F.2d at 1208).

Defendants highlight several deficiencies in plaintiff's "description of disbursements" that, according to defendants, preclude a meaningful evaluation of whether the expenditures are reasonable. Specifically, defendants challenge the following charges:

- $1977.80 billed for photocopies where plaintiff's counsel have failed to provide a per page copy rate and have failed to provide a date for the largest copy charge ($1956.80);
- $30.94 billed for long distance calls where plaintiff's counsel have failed to provide any dates or location details;
- $184.00 billed for facsimiles where plaintiff's counsel have failed to provide any dates or location details;
- $229.45 billed for mileage where plaintiff's counsel have failed to provide any information regarding distance, travel locations, dates or mileage rates;

- $3753.25 billed for deposition expenses where plaintiff's counsel have failed to provide either the identity of the deponents or any invoices; and

- $230.20 billed for Westlaw research where plaintiff's counsel have failed to provide the subject matters researched or the dates on which such research was conducted.

Defendants further assert that they inquired about these deficiencies during the consultation period, but that plaintiff's counsel declined to provide additional information or clarification.

Plaintiff's counsel have the burden to prove the reasonableness of the expenses outlined above. *See Case*, 157 F.3d at 1258. This burden is not a high one, *see id.* at 1259, and the court has no doubt that plaintiff's counsel could have proven the reasonableness of most, if not all, of these expenses had they made any effort to do so. For whatever reason, however, they have made no effort whatsoever to justify any of the expenses set forth above. *Cf. Cadena v. Pacesetter Corp.*, No. Civ.A. 97–2659–KHV, 1999 WL 450891, at *7 (D.Kan. Apr. 27, 1999) (plaintiff met burden of proving reasonableness of various charges where counsel simply provided an affidavit asserting that the facsimile charges were supported by invoices; that Westlaw research was necessary for purpose of locating controlling authority; that copy charges were reasonable in light of court pleadings, production of documents and exhibits for trial; and that deposition expenses related to trial preparation). Plaintiff's counsel have not even mentioned any of these expenses in their papers, much less by way of affidavit testimony. In light of these circumstances, the court will deduct the expenses outlined above, totaling $6405.64, from plaintiff's request for $7644.29 in expenses. *See Case*, 157 F.3d at 1259 (district court did not abuse its discretion when it denied all copying costs where appellants made no effort to justify copying costs and, thus, failed to carry their burden of showing that such costs were reasonable). Thus, the court awards plaintiff $1238.65 in expenses.[14]

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Diecidue's motion to award statutory attorney's fees and non-taxable expenses (doc. # 214) is granted in part and denied in part. The court awards plaintiff $69,101.00 in fees and $1238.65 in expenses, for a total award of $70,339.65.

**IT IS SO ORDERED.**

---

**14.** Defendants also object to $362.00 billed for mediation expenses on the grounds that plaintiff should not be allowed to recover expenses related to the "wasted effort" of mediation. As set forth above, if the court were to deduct this expense from plaintiff's disbursements simply because the mediation was unsuccessful, then it would discourage plaintiffs and their counsel from engaging in such efforts. *See* discussion *supra* pp. 1168–69. Thus, the court will not deduct this expense.